## RUSSELL vs. SCUDDER.

To pass the title to a check, to a purchaser, so as to place him in the position of a *bona fide* holder and to relieve him from the equities existing against the original holder, something more should be required of him than simply parting with money upon the individual checks of the borrower, upon the faith of receiving the avails of the check in question, when paid.

There should either be a delivery, or some positive act showing an actual transfer of the check itself, or a parting with the right to dispose of it.

It would be a dangerous position to hold, in reference to paper of that character, that when the original holder kept the entire possession and full control of the check, and gave other paper for moneys advanced, the party making the advances occupies the position, and is entitled to the protection, of a *bona fide* holder of negotiable paper. *Per* MILLER, J.

A verbal pledge of a negotiable instrument, without a delivery or an absolute transfer, will not make the pledgee a *bona fide* holder thereof.

THIS action was brought to recover the amount of a check made by the defendant on the 12th of October, 1861, at New York, directed to the Bull's Head Bank, and which required the said bank to pay to H. M. Pierce or bearer, on demand, the sum of 560 dollars. The check was presented at the bank on the 12th day of October, 1861, and payment demanded and refused. The defendant, in his answer, denied the transfer of the check to the plaintiff for a valuable consideration, and that he was the lawful owner and holder of it. He also alleged that the check was obtained of the defendant by fraud, and under a pretense that the same was to be used for a specific purpose; and that it was diverted from that purpose, by Pierce. He also sets up that at the time the check was obtained from him, and at the time of the transfer thereof, said Pierce was indebted to the defendant in a sum greater than the amount of the check; that the check was received by the plaintiff after it was due and after it had been presented to the bank and payment refused, and avers that the plaintiff was not the holder thereof in good faith.

It appeared upon the trial that the check was given to Pierce, the payee, by the defendant on or about the 8th or 9th of October, 1861. According to Pierce's testimony Scud-

der came to him and represented that he was short of funds and asked him to exchange checks, which they had frequently done before. Pierce gave the defendant his check for $600, and the defendant gave back a check for $560 and $40 in unbankable money, the check being dated ahead, with Pierce's consent. On the 11th of October, Pierce needing funds, drew on a broker, one Lawrence, for $250 on account of the check, and on the 12th drew the balance $310. On the same day the check was deposited. On the Monday following, the 14th, Pierce was informed that the check was returned unpaid; and the next day he stated this fact to a Miss King, who, knowing it was good, said that she would go down to Lawrence and take it up. Pierce requested her to let him do the business for her; she handed him the money and he went with it to Lawrence, got the check and returned it to Miss King. On the 15th Pierce gave Lawrence an order for the check, on the Importers and Traders' Bank. He gave Lawrence his own checks when he borrowed the $250 and the $310. Miss King held it some time and passed it off to a Mrs. Gori, who passed it to the plaintiff, and the latter applied it on notes he held against Mrs. Gori.

It also appeared by the evidence of the paying teller of the Bull's Head Bank that the defendant, before the check was presented for payment, called at the bank and stopped payment of it; that it was afterwards presented for payment and he refused to pay it, and made a memorandum in pencil across the face—" No funds, stopped."

According to the testimony of the defendant he held several demands against Pierce at the time the check was dated and prior and subsequent to that time, viz: one note dated March 26, 1861, for $600; one check dated September 27, 1861, for $800; one check dated October 14, 1861, for $917.54; which, after deducting payments, made a balance due him of $1820. And on the 14th of October Pierce promised to return the check to the defendant, and that it was to be indorsed on the check for $917.54, which he had

against Pierce. Pierce stated at the time that he had not got the check with him, but would get it and hand it to him.

Upon the trial the defendant's counsel offered in evidence a note of Catherine Gori, dated September 24, 1861, at 60 days, for $500, which the defendant had received before maturity, of Pierce. The evidence was objected to, upon the ground that no such defense was set up in the pleadings, and the objection sustained; to which decision the counsel for the defendant excepted. " The judge charged the jury that if the testimony satisfied them, that on the 11th or 12th of October, 1861, Pierce, in getting the money from Lawrence, pledged to Lawrence the avails of that check if paid, so that he obtained the money on the faith of that, and not of Pierce's check, so that subsequently delivering the check to Lawrence was but giving him the legal control to assert his private or equitable right to the money it represented, they might find a verdict for the plaintiff; otherwise for the defendant."

The defendant moved, at special term, for a new trial, which was denied. From which decision and the judgment entered thereon the defendant appealed to the general term.

*E. Clarke,* for the defendant and appellant.

*J. Hardenburgh,* for the plaintiff and respondent.

*By the Court,* MILLER, J. I think the learned justice erred in his charge to the jury upon the trial of this cause. The evidence showed, that Pierce obtained of Lawrence on account of the check, $250, at one time and $310 at another time, being the next day, and the day of the date of the check, the 12th of October. At one of those times he showed the check to Lawrence; but gave his individual checks, on each occasion, for the amount of the moneys which he received. Pierce retained possession of Scudder's check, deposited it in the bank, and after the check had been presented and

payment stopped, he gave Lawrence an order on the bank for the check.

It will be noticed that there was no delivery of the check to Lawrence, nor any actual agreement that he should become the owner of it. The most favorable view that can be taken of the transaction, so far as Lawrence is concerned, is, that he relied upon the money received in payment of the check to reimburse him for the advances he had made upon Pierce's checks.

Considering the law merchant as applicable to commercial paper, I am inclined to think that this was hardly sufficient to pass title to the check to Lawrence so as to place him in the position of a bona fide holder and to relieve him from the equities which existed against the original holder. The doctrine that a *bona fide* holder may recover upon paper taken innocently is founded upon the commercial policy of sustaining the credit of negotiable paper. (3 *Kent's Com.* 79.) Something more should be required than simply parting with money upon the individual checks of the borrower, upon the faith of receiving the avails of a check when paid. There should either be a delivery or some positive act showing an actual transfer of the check itself.

A delivery is not always essential to vest the legal title in the payee or indorsee where the transfer is complete. (*Chit. on Bills*, 262.) And even actual possession might not affect the right to recover on a bill or note, if the plaintiff has a clear right to the money due upon it. (5 *East*, 476. 2 *Sand.* 47, *a. n.* 1. *Selden* v. *Pringle*, 17 *Barb.* 458. *Smith* v. *Maine*, 25 *id.* 33. *Johnson* v. *Jones*, 4 *id.* 369. *Armstrong* v. *Tuffts*, 6 *id.* 438.) But where there is no assignment; no transfer of the title; no understanding or agreement by which the ownership is changed; and when other paper or security is taken, it has never been held that title to negotiable paper passes without a delivery. In the absence of delivery the proof should be exceedingly strong that a valid transfer or assignment was made, and that the title passed. In order to

Russell *v.* Scudder.

maintain an action as a *bona fide* holder of paper of this character, there must be something more than parting with money on the delivery of the checks of the payee. There should be evidence to establish that the holder actually parted with his right to dispose of the check. There is certainly no such testimony in the case, and it would be an exceedingly dangerous doctrine to hold, in reference to paper of this character, that where the original holder kept entire possession and full control of the check and gave other paper for moneys advanced, the party making the advances occupies the position, and is entitled to the protection of a *bona fide* holder of negotiable paper.

The charge of the judge left the case to the jury to be satisfied, from the testimony, that there was a pledge of the avails of the check, and that Pierce obtained the money on the faith of it, when in fact the check was not delivered and Lawrence did not, by reducing it to possession, do what ordinarily would be considered proper and essential if he had trusted to the paper itself. Can it fairly be claimed that Lawrence advanced the money on the faith of the check, when there is no positive evidence of that fact, and it appears that he never had control of it until it was stopped? If he intended to rely upon it why take Pierce's checks and leave the defendant's check in Pierce's hands? Why not take possession of the check upon which he claimed that the money was advanced? As he had done nothing of the kind, must it not be assumed that Lawrence never had the control of it so as to entitle him to claim it as a *bona fide* holder.

Conceding, however, that there may be some evidence from which it may by possibility be inferred that Lawrence parted with his money, on the faith of the check, yet I think that a verbal pledge of a negotiable instrument of this kind, without a delivery or an absolute transfer, would not make him a *bona fide* holder, and the charge of the justice was therefore erroneous.

It perhaps may be questionable whether the transaction

presented would not place the holder in the position of a mere assignee who takes negotiable paper after due subject to all equities existing in favor of the original maker. (*Franklin Bank* v. *Raymond,* 3 *Wend.* 69. *Hedges* v. *Scaly,* 9 *Barb.* 214. *Chamberlain* v. *Gorham,* 20 *John.* 144. *Edwards on Bills,* 286, 287.) As however a new trial must be granted for the error of the judge in his charge to the jury, I forbear a discussion of this point and the other questions made.

The judgment must be reversed and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, December 7, 1863. *Hogeboom, Peckham* and *Miller,* Justices.]