## BODY vs. JEWSEN and others.

(1-4) ASSIGNMENT OF NOTE AND MORTGAGE. (1) *Transfer of note without assignment of mortgage, effect of.* (2-3) *Assignment of note as security for preexisting debt — Rights of assignee.* (4) *Equitable counterclaim by mortgagor against assignee of mortgage.* (5) *Presumption of insolvency.* (6) *Time to file finding — Directory statute.*

1. A transfer of a negotiable note secured by mortgage, with an agreement to assign the mortgage when found (it being mislaid), carries the mortgage with it in the same manner as if a written assignment of the mortgage were made at the same time; and if the written assignment is not executed until after the note has become due, this will not affect the rights of the assignee as against the maker of the note.

Body vs. Jewsen and others.

2. Where a debtor, not being under any obligation to do so, transfers a negotiable instrument to secure a *preexisting debt* in respect to which both parties are left *in statu quo*, no new consideration, stipulation for delay or credit being given, or right parted with by the creditor, he is not the holder of the collateral for value, in the usual course of trade, but receives it subject to all the equities existing against it at the time of the transfer. *Bowman v. Van Kuren*, 29 Wis., 209.

3. Thus, where a mortgagee, whose mortgages were past due, threatened to foreclose them, and the debtor transferred to him a negotiable note as further security, upon his general promise " to be more lenient " in respect to such mortgage debt, but without any agreement to forbear the enforcement thereof *for any specified time: Held*, that the equities of the maker were not cut off by such transfer.

4. J., owning lots in K. subject to mortgages to the plaintiff, agreed with B. and wife, owning lots in F., for an exchange of property, on condition that J. should pay the mortgages on the K. lots. As *security* for the performance of this condition, J. gave his note payable to Mrs. B. or bearer, secured by mortgage to her of the F. lots. The instruments were thus executed to Mrs. B. at the request of B., who was indebted to her in the sum of $800, and was insolvent. A few days afterwards B. gave J. his note for $71. In an action to foreclose the mortgage executed to Mrs. B., it appeared that B. had an interest in the F. lots, at the time of said exchange, exceeding the amount of his $71 note, and that the note was due at the commencement of the foreclosure suit. *Held*, that J. had an *equitable counterclaim* in that action for the amount of said note; there being no proof that B. was solvent when such counterclaim was pleaded.

5. Proof that B. was solvent *at the time of the trial* would not overcome the *presumption* that he was insolvent at the time issue was joined, arising out of his former insolvency. And his own testimony that he was worth " three or four thousand dollars in real and personal property not exempt from execution," without evidence as to where such property was, or that it was held in his own name, did not show that it could be reached by ordinary legal process, and therefore did not affect any right of equitable set-off which would exist in case of his insolvency.

6. Sec. 19, ch. 132, R. S., so far as it requires a judge by whom an action is tried without a jury, to file his findings of fact, etc., *within twenty days* after the term at which the trial was had, is merely *directory;* and a judgment will not be reversed because such findings were not filed until after the time prescribed. *Williams v. Ely*, 13 Wis., 1.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought 'to foreclose a mortgage on certain lots in the city of Fond du Lac, dated October 11, 1869, and executed by the defendants *William Jewsen and wife* to the defendant *Sophia J. Braley*, to secure the payment of a note of the same date given by the said *William Jewsen* for $625, and ten per cent. interest, payable to such mortgagee or bearer.

Previously to the date of these securities the plaintiff held three mortgages on certain real estate in Kilbourn City, the equity of redemption in which was owned by the defendant *William Jewsen.* · The latter exchanged the Kilbourn City property with the defendants *George F. Braley and wife*, who then owned the mortgaged premises in Fond du Lac, for such premises, and one of the conditions of such exchange was, that *Jewsen* should pay the mortgages so held by the plaintiff. The note and mortgage in suit were given to secure the performance of such condition, and were assigned by *Mrs. Braley* to the plaintiff as additional security for the payment of the debts which the mortgages on the Kilbourn City property were given to secure. The defendants *Jewsen* conveyed the last mentioned property to *Mrs. Braley*, at the request of her husband. At this time *George F. Braley* was indebted to his wife in the sum of eight hundred dollars, and was insolvent. The Kilbourn City property was then worth, at least, nine hundred dollars.

The defendants *Jewsen* alone answered the complaint, and interposed the following defenses:

1. A general denial. Each of them also filed an affidavit denying positively under oath the signing and execution of the note and mortgage in suit.

2. They alleged that when said contract to exchange property was made, the defendant *George F. Braley* described particularly the character and condition of the dwelling house on one of the Fond du Lac lots included in the mortgage (the details of which description are stated in the answer); that they relied upon his statements in that behalf; that such statements were false in many specified particulars; and that the property

was worth at least four hundred dollars less than it would have been had such statements been true.

3. The defendant *William Jewsen* claimed to set off against the debt secured by the mortgage in suit, a promissory note held by him against *George F. Braley* for $71, and ten per cent. interest, dated October 16, 1869, and then past due.

4. That the plaintiff is not a *bona fide* holder, for value, of the note and mortgage in suit, but holds the same subject to any defense, counterclaim or set-off thereto, which would be available to the mortgagors had said *Braley* or his wife retained the securities and brought this action.

The circuit court found against the mortgagors on all of the above propositions, whether of fact or law, and gave judgment for the plaintiff of foreclosure and for the sale of the mortgaged premises, and payment to the plaintiff of the amount due on the note and mortgage, by the terms thereof, together with the sum of fifty dollars for solicitor's fees (which is stipulated for in the mortgage), and costs. The sum thus adjudged to be paid to the plaintiff is less than the aggregate amounts due on the Kilbourn City mortgages.

The findings of fact and conclusions of law were not filed until more than twenty days after the term of the court at which the action was tried.

The testimony relating to the several propositions considered by the court, is sufficiently stated in the opinion.

The defendant *William Jewsen* has appealed to this court from such judgment.

*D. W. C. Priest*, for appellant, to the point that the plaintiff was not a *bona fide* holder of the *Jewsen* note, for value, so as to cut off the counterclaim, cited 20 Johns., 637; 6 Hill, 93, 98; 36 N. Y., 128; 23 Wend., 311; 5 Wis., 107; 15 id., 1.

*Gillett & Taylor*, for respondent:

This court has held that where one takes an assignment of a note merely as collateral security for an antecedent debt, which is not discharged, but remains unsatisfied, and no new consid-

eration intervenes at the time of the transfer, he is not entitled to protection as a *bona fide* holder for value. *Jenkins v. Schaub*, 14 Wis., 1; *Cook v. Helms*, 5 id., 107. On the other hand it has held that when the note is taken (before due and without notice) in payment of the antecedent debt, the assignee is protected. *Stevens v. Campbell*, 13 Wis., 375; 16 id., 659; 17 id., 355; 25 id., 543, 549. And the rule first stated is always qualified by the statement that if there be any consideration for the transfer, except the mere existence of the antecedent debt, the holder is protected. In this case there was an agreement on the part of the plaintiff, that if this additional security were given for the debt due him, he would not proceed to enforce his lien upon the assignor's property. This was a good consideration for the transfer. *Quinn v. Hard*, 43 Vt., 375; *Goodman v. Simonds*, 20 How. (U. S.), 343, 371. The courts of New York have carried the rule first above stated, farther, perhaps, than those of any other state; yet in *Fenby & Johnson v. Pritchard*, 2 Sandf., 151, it is held that where there was an original agreement that the debt should be secured by collateral, and, sometime after the debt was incurred, a note was transferred as collateral, the holder was protected as a *bona fide* holder for value. 2. The transfer of a note secured by mortgage gives the benefit of the mortgage security to the transferee, unless there is a distinct agreement to the contrary. *Blunt v. Walker*, 11 Wis., 334; *Catlin v. Henton*, 9 id., 476; *Croft v. Bunster*, id., 503; *Rice v. Cribb*, 12 id., 179; 16 id., 616; 17 id., 297; 20 id., 360; *Fisher v. Otis*, 3 Chand., 83; *Martineau v. McCollum*, 4 id., 153.

LYON, J. I. Did the defendant *William Jewsen* execute the note and mortgage in suit, and did *Mrs. Jewsen* execute such mortgage? Notwithstanding their positive denials contained in their affidavits, when the former testified as a witness on the trial, he was shown such note and mortgage, and testified concerning them as follows: "The signature of the note looks

like mine, but there is one peculiarity about it. The same is true of the mortgage. I would not swear that they are my signatures, or that they are not." The note and mortgage were also shown to *Mrs. Jewsen*, and she testified that she did not sign the mortgage knowing what it was, but declined to testify that the mark affixed thereto, to verify what purported to be her signature, and which was shown to her, was not her mark. But, aside from this evident change of tone in the sworn statements of the mortgagors on this subject, the testimony of *Mr. Griffin*, who drew the papers, signed the name of *Mrs. Jewsen* to the mortgage, and, I think, took the acknowledment thereof, and the testimony of several other witnesses, leave no reasonable doubt of the fact that the note and mortgage were executed by *Wm. Jewsen*, and the mortgage by his wife, with full knowledge of the contents thereof. The proof of these facts is overwhelming.

II. Does the plaintiff hold the note and mortgage under such circumstances that a defense, counterclaim or set-off which might have been interposed thereto in the hands of *George F. Braley* or his wife, is unavailable against the same in the hands of the plaintiff? Or, stating the question in another form, did the plaintiff become the holder of the securities before due, *bona fide*, and for value?

The complaint contains an averment that " on the 4th day of November, 1870, the said *Sophia J. Braley*, by an instrument in writing, duly executed, sealed, witnessed and acknowledged, duly assigned to this plaintiff all her right, title and interest, in and to the said mortgage and note." The note became due on the 14th day of the preceding October. The evidence shows, and the court so found, that the note was transferred to the plaintiff as early as May, 1870, with an agreement to assign the mortgage when found (the same having been mislaid), and that it was so assigned on the 4th of November, 1870.

The transfer of the note, under these circumstances, carried with it the mortgage, without any written assignment thereof.

The plaintiff had the same interest in the mortgage immediately after such transfer in May, that he had after the execution of the written assignment in November. This principle is elementary, and the only thing in the way of applying it to this case is the foregoing averment in the complaint. It is a little difficult to hold a proposition of fact in favor of a party, who, in his pleading, expressly negatives the existence of such fact. But it may be that the complaint is amendable in this particular, and we deem it best to consider the question before us upon the hypothesis that the plaintiff became the holder of the securities before due, as found by the court.

The circumstances under which the plaintiff became the holder of the securities, and the consideration of the transfer thereof to him, are stated by the plaintiff in his testimony; and he must be held bound by his statements in that behalf. His testimony is as follows: " Q. Was there any consideration for the assignment of this note and mortgage in suit, except the debt which you held as above described by the three mortgages on the Kilbourn City property? A. It was simply turned out as additional security for these debts, and that was all there was to it. Q. Was there any other consideration ? A. I gave him to understand that I should foreclose those mortgages unless I had additional security, but if that was given I would show him some lenity." This conversation was with *George F. Braley*, and the last interrogatory was put by his own counsel. Not satisfied with the answer of his client, the counsel put to him the following question : " Was it then a part of the consideration for the transfer of the note and mortgage in suit, that you should forbear suit upon the notes and mortgages upon the Kilbourn City property ?" The record states that this question was objected to as leading, and that the objection was sustained by the court. Yet the plaintiff answered it in the affirmative.

The most that can be justly claimed for the plaintiff from his own testimony is, that he was threatening to foreclose his

mortgages on the Kilbourn City property, giving as a reason for doing so that his security was inadequate, and that the *Braleys* assigned the note and mortgage in suit to him, pursuant to an understanding with him that if they did so he would be more lenient with them. There is not the slightest testimony in the case tending to show that the plaintiff agreed to postpone the time of payment of the debts secured by the Kilbourn City mortgages to any specified time. He might have commenced foreclosure proceedings on those mortgages the next day after he received the transfer of the note and mortgage in suit, and there is nothing in his testimony here to show that he had made any contract which would have defeated or abated such proceedings, or reduced the amount of his recovery therein. Neither is there any proof or pretense that when the debts secured by the Kilbourn City mortgages were created, there was any stipulation for further security, or that the plaintiff paid any new consideration for the transfer to him of the note and mortgage in suit. The case is, therefore, within the rule laid down and sanctioned by this court in *Bowman v. Van Kuren*, 29 Wis., 209, which, for convenience, is here repeated : " When a debt is created without any stipulation for further security, and the debtor afterward, without any obligation to do so, voluntarily transfers a negotiable instrument, to secure the pre-existing debt, and both parties are left in respect to the pre-existing debt in *statu quo*, no new consideration, stipulation for delay, or credit being given, or right parted with by the creditor, he is not the holder of the collateral for value, in the usual course of trade, but receives it subject to all the equities existing against it at the time of the transfer." (p. 219.)

It may be, and probably is, true, that the plaintiff was induced by such transfer to him of these securities, to forbear to foreclose his mortgages on the Kilbourn City property ; but the essential fact that he agreed to do so for a specified time, or that he made any agreement on the subject, is entirely wanting.

The whole subject is so fully discussed by the chief justice in *Bowman v. Van Kuren*, that further comment here is unnecessary. On the general subject, however, two cases, not cited by the chief justice, may be added to the numerous cases cited by him. They are *Quinn v. Hard*, 43 Vt., 375 ; and *Goodman v. Simonds*, 20 How. (U. S.), 343.

We conclude that the plaintiff took the note in suit subject to all equities existing against it before, and at the time, it was transferred to him.

III. This brings us to consider the false representations alleged to have been made by *George F. Braley* to the *Jewsens*, at the time they exchanged property, concerning the condition of the dwelling house on one of the Fond du Lac lots. The direct testimony in support of the allegation that such false representations were made by *Braley*, is that of the mortgagors themselves. The *Braleys* deny positively that any such representations were made. In view of the forgetfulness of the mortgagors in the matter of the execution of the securities, we are unable to say that we think their recollection is more reliable than that of the *Braleys*, or that their testimony preponderates over the testimony of the latter. The corroborating testimony on both sides is of little importance. There is, however, one fact in the case which is very significant. The *Jewsens* had formerly resided in Fond du Lac, and *Mr. Jewsen* supposed that he knew all about the house in question, and much more than *Braley* knew about it. This would naturally lead him to rely upon his own supposed knowledge, without requiring from *Braley* a full statement of the condition of the house. It is true that *Jewsen* had his mind directed to the wrong house, but it is not proved that *Braley* knew of the mistake, or said anything to cause it. This misapprehension of *Jewsen* in regard to the identity of the house fully explains the surprise and disappointment of *Mrs. Jewsen* and of their daughter when they reached Fond du Lac and found an unfinished and untenantable house on their lots.

Further statement of the testimony or discussion of the question of fact will subserve no useful purpose. We think that the mortgagors, the *Jewsens*, have failed to prove, by a preponderance of the testimony, that *George F. Braley* or his wife made any false representations to them in respect to the character or condition of the house in question.

IV. We are now to determine whether the note for seventy-one dollars, given by *George F. Braley* to *Jewsen*, and dated October 16, 1869, should be allowed against the mortgage debt as an equitable set-off. To do this it is necessary to ascertain what interest the former had in the debt secured by the mortgage upon the Fond du Lac property (if any), and this depends, of course, upon his interest in the property itself.

It is proved that he paid the whole consideration for such property, and had the lot upon which the unfurnished house stood, conveyed to his wife, and the other two lots to a third person, who, at *Braley's* request, conveyed the same to *Jewsen*. *Mrs. Braley* testified that the lot was conveyed to her in payment of the debt which her husband owed her. Her testimony in this behalf imports absolute verity. Hence, the proceeds of the other two lots belonged to *George F. Braley*, and, so far as his creditors are concerned, he is interested in the mortgage to the amount of such proceeds. What that precise amount is, does not appear, but there is sufficient evidence to show that it is more than the amount of the note above mentioned.

It appears farther that but recently, before the execution of the note and mortgage in suit, *George F. Braley* was insolvent to a large amount, and there is no doubt that *Jewsen* believed that he was insolvent when the note of October 16, 1869 was given. It is no great stretch of presumption to hold, under these circumstances, that *Jewsen* took the note in the faith that the amount thereof could be applied towards the payment of the debt secured by the mortgage in suit, and with the expectation that if *Braley* did not pay the same, it would be so applied. But however this may be, while there was some evidence that

*Braley* was solvent at the time the testimony in this action was taken, there was none that he had become so when the answer of the defendant *Jewsen* was interposed, claiming to set off said note against the debt secured by the mortgage sought to be foreclosed in this action. The legal presumption is, that *Braley* was then insolvent, and that is the time when the right to assert and claim such set-off (if it then existed) became fixed.

Further than this, the evidence fails to show that the financial condition of *Braley* had so improved that his creditors could collect their demands against him at the time of the trial, by ordering legal processes. True, he testified that he was worth three or four thousand dollars in real and personal property, not exempt from seizure and sale on execution ; but he fails to say where such property is, or in whose name the same may be held. For aught that appears the property may be located in some other state or country, or, like the Fond du Lac lots, it may be held by some third person in secret trust for the real owner. Hence, so far as the right of set-off here claimed is concerned, it must be held that *George F. Braley* is insolvent.

Under all the circumstances, we think that this is a proper case for the application of the doctrine of equitable set-off, and that the note of *Braley* for seventy-one dollars, should be allowed to the defendant *Jewsen* against the debt secured by the mortgage in suit. See 2 Story's Eq. Jur., ch. 38, title, "Set-off."

V. The objection that the judgment is irregular because the circuit judge failed to file his findings of fact and conclusions of law within twenty days after the court at which the trial took place, as required by the statute (R. S., ch. 132, sec. 19), is untenable. That statute is merely directory, and the judgment is not affected, although (as in this case) the findings be not filed within the prescribed twenty days. This court has so held in the following cases, and doubtless in others : *Williams v. Ely*, 13 Wis., 1 ; *Ottillie v. Waechter, ante*, p. 252.

*By the Court.* — The judgment of the circuit court is reversed,

and the cause remanded with directions to that court to allow the amount of the note of October 16, 1869, as a set-off to the claim of the plaintiff, and to render the usual judgment of foreclosure, etc., for the balance of the debt secured by the mortgage, and also to adjudge that all sums collected on account of such judgment shall apply as payments upon the mortgages upon the Kilbourn City property.