92  277
s92  416

BURNHAM, Trustee, Respondent, vs. MERCHANTS' EXCHANGE BANK, Appellant.

*January 9 — February 18, 1896.*

*Promissory notes: Pledge: Assignment: Mutuality of contract:* Bona fide *purchaser.*

1. A savings bank deposited with a trustee promissory notes to a large amount as collateral security for a smaller amount of money borrowed from certain associated banks. Subsequently it gave the defendant bank, to which it was indebted, a written order on the trustee, authorizing him to deliver to defendant such of the notes which he then held, or might thereafter hold, in excess of what might be necessary to satisfy the debt for which they were pledged, as defendant should select and take in even exchange for and payment of the evidences of indebtedness which it held against the savings bank, and assigning such notes to defendant. Afterwards the savings bank withdrew from the trustee a note made by one B., and substituted therefor the note in suit, which had been indorsed in blank by the payee but did not belong to the savings bank, and this, with others, remained in the hands of the trustee after satisfaction of the debt to the associated banks. The defendant never exercised its option of selecting notes to be taken by it under the terms of the order on the trustee. *Held,* that such order was not an executed sale to defendant, because no specific

notes were conveyed by it, and was not valid as an executory contract for want of mutuality, the defendant being in no way bound thereby. Defendant therefore never acquired any title to the B. note, and did not, by the substitution of the note in suit, become in any way a purchaser of the latter.

2. If, by the transaction above stated, any interest in the note in suit passed to the defendant bank, it could not be said to have obtained such interest in the usual course of business, so as to be a *bona fide* purchaser.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an action of replevin to recover the possession of a promissory note for $5,000. The note is dated June 12, 1893, and due three months after date. The plaintiff claims the note on the ground that it is a part of a trust estate of which he is the trustee. The defendant claims to own the note by purchase as a *bona fide* purchaser from a former trustee.

It appears that one John B. Koetting was the trustee of the estate of one Clark Shepardson. As such trustee, he held the promissory note which is the subject of the suit. It came to him, indorsed in blank, from a former trustee. Koetting was, at the same time, the cashier of the South Side Savings Bank of Milwaukee. On the 12th day of June, 1893, the South Side Savings Bank borrowed $90,000 of certain associated banks, and, as collateral security for the loan, delivered to one Bigelow, as trustee for the banks, promissory notes of the face value of $153,000. Among these collateral notes was a note signed by one John Barth for $10,000, which was a perfectly good note. On July 14, 1893, the South Side Savings Bank gave to the defendant an order in writing upon Bigelow, in the words and figures following:

"Milwaukee, Wis., July 14th, 1893.

"*F. G. Bigelow, Esq., Trustee, City* —

"SIR: You are hereby authorized and directed to deliver to *Merchants' Exchange Bank of Milwaukee, Wis.,* its suc-

cessor or assign, all money, notes, and property now or which hereafter may come into your possession or under your control from this bank in excess of what may be necessary to satisfy the present obligation of this bank as security for which such property was placed in your possession and under your control, to the extent of fifty thousand dollars of such excess; said *Merchants' Exchange Bank*, its successor or assign, to be allowed to select from such excess such property as it will take, and, at the time of making such selection, shall deliver to you the certificates of deposit of this bank, corresponding to the amount and value of property or money so taken from you. And, for a valuable consideration to this bank paid this day by said *Merchants' Exchange Bank*, all such money, notes, and property are hereby assigned, transferred, and set over to said *Merchants' Exchange Bank*, its successor or assign, with due and sufficient authority to collect, receive, and receipt for the same.

"SOUTH SIDE SAVINGS BANK,

"John B. Koetting, Cashier."

Afterwards, two days, the president of the South Side Savings Bank took the note in suit, and another of like amount, both indorsed in blank "John B. Koetting, Cas.," to Bigelow, and substituted them in the place of the aforesaid note made by John Barth, and withdrew the Barth note. Koetting indorsed the note in suit, and delivered it to the president of the bank, for the purpose of having it so substituted. Neither Bigelow nor the defendant knew that the South Side Savings Bank had not the full legal title to the note and the right to pledge it in that manner.

The South Side Savings Bank failed, and went into the hands of a receiver, July 24, 1893. July 14, 1894, the defendant put its claim against the South Side Savings Bank in judgment. It never offered to take any of the notes deposited with Bigelow in payment of any part of such indebtedness. By September in 1894 Bigelow had made the

amount of the $90,000 loan out of the collateral notes, and had notes left, including the note in suit, to the nominal amount of $41,500.   About October 1, 1894, Bigelow delivered the note in suit to the *Merchants' Exchange Bank*, pursuant to a judgment to which many of the creditors of the South Side Savings Bank, its receiver, and Bigelow, were parties.   The trustee of the Shepardson estate was not a party.   At this time the note was long since due.   The defendant is still a creditor of the South Side Savings Bank.

There were a finding and judgment for the plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles*, and oral argument by *Charles Quarles*.

For the respondent there was a brief by *Geo. E. Sutherland* and *Rogers & Mann*, and oral argument by *Mr. Sutherland.*

NEWMAN, J.   The plaintiff, as trustee of the estate of Shepardson, the original owner, is now the owner and entitled to the possession of the note in controversy, unless his title has been divested, and a better title acquired by the defendant, through the transaction by which it was pledged for the debts of the South Side Savings Bank.   The defendant has derived no better title unless it is established by the evidence that it is a *bona fide purchaser* of the note, for none but a *bona fide purchaser* of commercial paper derives a better title than his vendor had.   While the title of the true owner may become divested and transferred to such a purchaser without the consent or fault of the true owner, because such a result may happen the transaction should show clearly that the purchase is *bona fide*, within the meaning of the law.   It will not be aided by liberality of construction or intendment, but will be scrutinized with considerable strictness, for it is the duty of the court to protect the right of the owner to his property, so far as it can be done consistently with the rules of law.

A *bona fide purchaser* of commercial paper is defined to be one who has obtained it for value given at the time, before maturity, in the usual course of business and in good faith. 2 Am. & Eng. Ency. of Law, 390; Randolph, Comm. Paper, § 986. It is a good consideration, within the rule, if security for an antecedent debt is taken with some new consideration. But the antecedent debt alone, without some new consideration, is not sufficient. *Bowman v. Van Kuren,* 29 Wis. 209; *Body v. Jewsen,* 33 Wis. 402; *Black v. Tarbell,* 89 Wis. 390.

It is not claimed that the defendant gave any new consideration whatever for the order of July 14, 1893, through which, if at all, it must deduce its title to the note in suit. Nor is it claimed to have been at any time a *bona fide purchaser* of any of the paper which was then in pledge with Bigelow for the debt of the savings bank to the associated banks. But the claim is that, by some subtle process, not easily traced or understood, on the exchange between Bigelow and the savings bank of the Barth note for the note in suit, by which the latter note was substituted, as security, for the Barth note in the hands of Bigelow, the defendant became indued with the character of a *bona fide* purchaser for value of the note which was substituted. Evidently, the substitution of the one note for the other could not have that effect, unless the defendant owned the Barth note, or had some title in it, which it lost through the substitution. Whatever right or title it had in the Barth note was derived through the order of July 14, 1893. That note, with others, amounting to a large sum, face value, was then in the hands of Bigelow, as trustee for the associated banks, to be collected and applied to the payment of an indebtedness amounting to the sum of $90,000. It was supposed that the security was ample to pay that indebtedness and leave a large surplus of notes to be returned to the savings bank. The general property in these notes was in the sav-

ings bank.  Only a special property was in Bigelow.  His right was to collect the notes and apply the proceeds to the payment of the secured indebtedness, and to return the remainder after that was paid to the savings bank.  *Fraker v. Reeve*, 36 Wis. 85; *Wheeler v. Newbould*, 16 N. Y. 392; 18 Am. & Eng. Ency. of Law, 590.  The entire legal title to all these notes was in the savings bank and in Bigelow. Whatever interest the defendant at any time acquired or had it derived through the order of July 14, 1893.

The nature of that transaction was this: It was expected that, after the payment of the $90,000 indebtedness to the associated banks, there would be left, of the notes pledged for that payment, more than enough, face value, to pay the indebtedness of the savings bank to the defendant.  So the savings bank gave the defendant an option to select such of the remaining notes as it would be willing to take in even exchange and payment of the evidences of indebtedness which it held againt the savings bank, up to the amount of its claim.  Nothing in the writing suggests even that Bigelow is to hold any of the notes as security for the defendant's claim, but it plainly expresses that they are to be taken in payment and dollar for dollar.  This option could not well be exercised until after the debt to the associated banks had been paid and it was known which of the large amount of notes remained to select from; for it was not contemplated that the defendant should take all that were left, for it was expected that there would be more than enough to pay its debt remaining, and it was to take only such as it was willing to take in payment, dollar for dollar, of its claim, for the savings bank had not yet failed, and there was expectation that it would overcome the difficulties which beset it.  So that it could not be foreseen whether the defendant would not prefer to hold its claim against the savings bank, rather than to exchange it, dollar for dollar, for any of this surplus paper; and, as before said, there was no suggestion

in the writing that any of these notes were to be held as security either for or by the defendant. And it is plain that it was not intended that the defendant should be bound to take or receive any of this paper in payment of its claim. The writing is entirely innocent of any promise that it will take or select any. It is entirely at its option whether it will take or no. The option is entirely gratuitous, and without consideration. There is no promise by the defendant. There is no mutual obligation. As a contract executory, it is void for want of mutuality. It was not a contract executed. It could not have been intended as an executed sale of all the notes in Bigelow's hands. That is contrary to the whole tenor of the writing. It could not have been intended as an executed sale of a part of the notes, for it cannot be ascertained which specific notes were intended to be conveyed by it. There was no intention to convey, *in præsenti,* specified notes. If it was intended as a contract executory, it might operate as a conveyance of specific notes when they should become ascertained. That is, in effect, what it does provide. But it is void as an executory contract. It was not binding on the defendant, because it did not promise to do anything. It was a mere proposition by the savings bank, which might be withdrawn at any time before it was accepted and acted upon. It could become binding upon the savings bank, and upon the title of the notes, only when the defendant should do or begin to do the things which were the condition upon which the notes were to be delivered and the title was to pass. 1 Parsons, Cont. (6th ed.), 450, 451. This seems to be the understanding which the defendant had of it. At least, it does not appear to have done, or begun to do, any of the things which were of the condition on which the title of some of these notes was to pass to it. It does not appear that it selected any of these notes, nor offered to surrender any of its paper against the savings bank for them, nor recognized any obligation on its

part to do any of these things.  On the contrary, it brought
its action upon the evidences of indebtedness which it held
against the savings bank, and put its claim in judgment, be-
fore the claim of the associated banks had been paid, and
before it could be known which of the pledged notes would
be of the surplus and so subject to its selection and appro-
priation; and it is said that no part of that judgment has
been satisfied.  By the terms of the writing itself, the de-
fendant was to have those notes which it selected upon sur-
render by it of a corresponding amount of this indebted-
ness.

And, in any view, the defendant could have had no title
in the Barth note unless and until it became a part of the
surplus and should be selected.  It cannot be known whether
it would have been remaining in Bigelow's hands after the
payment of the associated banks was complete.  If it were
permissible to consider probabilities, it seems more likely
that it would have been paid and the proceeds gone to the
associated banks, for this is said to have been a perfectly
good note, and would, most likely, have been paid at ma-
turity.  So there can be no ground for claiming that the de-
fendant gave the Barth note for the note in controversy.
It never had that note, either in possession or control, so as
to entitle it to give or to trade it.  And this is all the con-
sideration which it claims to have given for the note in con-
troversy.  It neither gave nor promised to give any consid-
eration whatever for either the Barth note or for the note
in suit.  So it is clear that the defendant never purchased
the note in controversy nor acquired any title to it.

But, even if it could be held that at some time some in-
terest in this note passed to the defendant, it could not well be
held that it was a *bona fide* purchaser.  To have that char-
acter, not only must value be given, but the paper must be
obtained in the usual course of business.  To pledge com-
mercial paper as security for antecedent debts, or to turn it

out in payment of such debts, is recognized as being in due course of business. But it is unusual to make pledges or sales of paper which is unascertained and unidentified and not delivered. Ordinarily, the particular paper sold or pledged is identified and delivered. While it is not necessary always that there shall be actual delivery, it is believed that there must be an actual transfer of specific and designated paper, and, in the absence of delivery, there must be exceedingly strong proof that a valid transfer was in fact made, and that the title had passed (*Russell v. Scudder*, 42 Barb. 31); for in that case the evidence of title which possession gives is withheld from the purchaser. So, a mere assignment of the note is not equivalent to the indorsement and delivery. *Hull v. Swarthout*, 29 Mich. 249; Randolph, Comm. Paper, § 989. Delivery or the want of it is considered a significant fact, for possession of such paper is presumptive evidence of title; and usually a sale of commercial paper, or a pledging of it for security, is accompanied by delivery. So, it has been held that a use of commercial paper as security, by the intervention of a trustee, is not in the usual course of business. *Roberts v. Hall*, 37 Conn. 205. In this case no designated or identified paper was either transferred or delivered to the defendant. It cannot be said to have become the purchaser of any particular or specified paper in the usual course of business. It did not purchase the note in controversy in the usual course of business.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.