COURT OF APPEALS
DECISION
DATED AND FILED

December 19, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP113**

STATE OF WISCONSIN

Cir. Ct. No. **2016CV8**

IN COURT OF APPEALS
DISTRICT IV

FIRST WESTERN SBLC, INC.,

PLAINTIFF-RESPONDENT,

V.

NEW LISBON TRAVEL MART, LLC,

DEFENDANT-APPELLANT,

JOSEPH R. DIORIO,

DEFENDANT.

APPEAL from a judgment and an order of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed.*

Before Blanchard, Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  New Lisbon Travel Mart, LLC, appeals a money judgment in favor of First Western SBLC, Inc., in the amount of $779,013.68.[1] The judgment was entered in a foreclosure action.  New Lisbon contends that it was entitled to a $190,000 credit toward the judgment based on a promissory note that it assigned to First Western in a short sale of the underlying property.  We affirm.[2]

## Background

¶2      In January 2016, First Western filed for foreclosure against New Lisbon and others on property that New Lisbon refers to as the "Travel Mart" property.  In February 2017, First Western obtained a foreclosure judgment that included a total judgment amount of approximately $1.6 million.

¶3      It is undisputed that no sheriff's sale of the Travel Mart property occurred.  Instead, in November 2017, with First Western's consent, New Lisbon sold the property in a short sale to a different entity.  It is also undisputed that, as part of the short sale, the entity's principal, Robert Rugg, gave New Lisbon a

---

[1] We construe New Lisbon's notice of appeal as also appealing a circuit court order entered on the same day as the judgment that appears to clarify the liability of New Lisbon and other defendants under the judgment.

[2] We note that each party cites to an unpublished per curiam opinion of this court, and that New Lisbon does not identify as unpublished the per curiam it cites, ***KNA Family LLC v. Fazio***, No. 2015AP771, unpublished slip op. (WI App July 6, 2016).  We remind the parties that, with limited exceptions that do not apply here, citation to unpublished per curiam opinions violates our appellate rules.  *See* WIS. STAT. RULE 809.23(3).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

promissory note for $190,000, and First Western required New Lisbon to assign the note to First Western.

¶4 The proceeds from the short sale were applied to the amount owed under the foreclosure judgment, reducing but not eliminating New Lisbon's obligation. The parties disputed whether New Lisbon was entitled to an additional $190,000 credit based on the promissory note that New Lisbon had assigned to First Western.

¶5 The circuit court held an evidentiary hearing and, approximately one year after the short sale, the court issued an oral decision. The court found that the note was "some form of an asset" payable to its holder, First Western, with payments not due until 2020. The court further found that New Lisbon's former business on the Travel Mart property had failed, resulting in the foreclosure and short sale. The court took judicial notice that Rugg's business on the property had already closed, making it "even more difficult for the Court to believe that the 190,000 debt would likely be paid on time, if ever." The court found that the failure of Rugg's business meant that there were now two recent owners of the Travel Mart property that had been unable to produce enough income to pay expenses. Finally, the court found that New Lisbon provided no expert testimony or other evidence establishing a value for the note.

¶6 Based on its findings, the circuit court concluded that New Lisbon "failed to prove a proper valuation of the note." In effect, the court concluded that New Lisbon had the burden to prove the value of the note if New Lisbon wanted a credit, and that New Lisbon failed to carry that burden.

***Discussion***

¶7      On appeal, New Lisbon renews its contention that it was entitled to a $190,000 credit toward the judgment based on the note.  As we understand it, New Lisbon makes four main arguments.  We address each argument in separate sections below.

*1.  Circuit Court's Factual Finding that the Note Was Unlikely to Be Paid*

¶8      New Lisbon first argues that the circuit court based its decision on an erroneous factual finding that the note was unlikely to be paid.  Putting aside whether the circuit court's decision was based primarily on that finding, we reject this argument for the reasons that follow.

¶9      New Lisbon correctly states that a factual finding is clearly erroneous if it is "against the great weight and clear preponderance of the evidence."  *See **Wisconsin Auto Title Loans, Inc. v. Jones***, 2006 WI 53, ¶25, 290 Wis. 2d 514, 714 N.W.2d 155.  However, New Lisbon does not demonstrate that the circuit court's finding that the note was unlikely to be paid was against the great weight and clear preponderance of the evidence.  On the contrary, New Lisbon concedes that the circuit court properly took judicial notice that Rugg's business on the Travel Mart property had closed.  Further, it was undisputed that New Lisbon's business on the same property had failed.

¶10      What New Lisbon really appears to be arguing is that there was *a lack of evidence* to support the circuit court's finding without more information as to Rugg's financial circumstances.  New Lisbon complains that the circuit court "knew nothing about [Rugg's] wealth, whether he owned other businesses or only one, or how much money he and/or his other business(es) earned per year."

¶11    New Lisbon's argument as to a lack of evidence does not persuade us because it assumes, contrary to the circuit court's conclusion, that New Lisbon did not have the burden of proof. New Lisbon fails to make a developed argument showing that New Lisbon did *not* have the burden. The closest New Lisbon comes is a citation in its reply brief to ***Marshall-Wisconsin Co. v. Juneau Square Corp.***, 130 Wis. 2d 247, 387 N.W.2d 106 (Ct. App. 1986), *aff'd in part, rev'd in part*, 139 Wis. 2d 112, 406 N.W.2d 764 (1987). ***Marshall-Wisconsin*** states that the defendant in a foreclosure action need not "plead or raise an affirmative defense of accounting or set-off." *See **id.*** at 274. However, ***Marshall-Wisconsin*** does not address the burden of proof and, therefore, New Lisbon's reliance on ***Marshall-Wisconsin*** does not establish that the circuit court erred in placing the burden on New Lisbon.

### 2. The Equitable Nature of Foreclosure

¶12    New Lisbon next argues that the "equitable nature of a foreclosure action required the Circuit Court to credit New Lisbon with the face value of the Note." This argument is not well developed, but, as we understand it, New Lisbon relies primarily on ***Body v. Jewsen***, 33 Wis. 402 (1873). New Lisbon's reliance on ***Body*** is not persuasive.

¶13    According to New Lisbon, in ***Body*** our supreme court held that the equitable nature of foreclosure requires that a foreclosure judgment be set off by the face value of a related promissory note. However, we find no such holding in ***Body***. The court in ***Body*** concluded that a set-off for the face value of a note was appropriate "[u]nder all the circumstances" in that case. *See **id.*** at 412. Thus, New Lisbon does not persuade us that ***Body*** required the circuit court here to credit New Lisbon with the face value of the note.

¶14 New Lisbon cites additional cases as well, but does not adequately explain how those cases support New Lisbon's argument that, as an equitable matter, the circuit court had no choice but to credit New Lisbon with the face value of the note. We deem New Lisbon's argument based on these cases insufficiently developed and discuss it no further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider inadequately developed arguments).

### 3. WIS. STAT. § 846.16

¶15 New Lisbon next argues that WIS. STAT. § 846.16 required the circuit court to determine the "fair value" of the Travel Mart property, and that the fair value in this case necessarily included the face value of the note. We reject this argument because we conclude that § 846.16 does not apply to a short sale.

¶16 The statute sets forth the procedure for a sale by "the sheriff or referee," *see* WIS. STAT. § 846.16(1)(a), and includes procedural requirements that are not logically applied to a short sale, *see, e.g.*, § 846.16(1r)(b)1. (requiring the sheriff or referee to file a report of the sale with the clerk of court no later than 10 days after sale). New Lisbon argues that, when there is severe pressure to sell, or a threat of foreclosure, a short sale is a "distressed" sale that should be governed by the same standards as a sheriff's sale. However, the statute is plainly not written so broadly and, by its terms, does not apply to short sales.

### 4. Estoppel

¶17 New Lisbon's final argument is that First Western should be estopped from opposing the $190,000 credit based on First Western's prior conduct. In particular, New Lisbon points to First Western's insistence that the

note be assigned to First Western, and that the note was accompanied by an allonge giving First Western all rights to enforce the note as the holder. New Lisbon asserts that First Western's conduct was an "admission" that the note "has value." New Lisbon argues that First Western should not be permitted to now act inconsistently with its admission by claiming that the note has no value or that the value is impossible to determine.

¶18    We reject New Lisbon's estoppel argument because we disagree that First Western's conduct shows an admission as to the note's value, particularly when that conduct occurred prior to the failure of Rugg's business. If there is a true inconsistency between First Western's position at the time of the short sale and its position now, New Lisbon's briefing fails to demonstrate it.[3]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] New Lisbon asserts that there was unrebutted testimony from its principal that he "anticipated" that First Western would reduce New Lisbon's debt by the amount of the note. However, New Lisbon does not explain why New Lisbon's one-sided expectation was reasonable or should control the outcome here.