WISCONSIN AUTO TITLE LOANS, INC.,
Plaintiff-Appellant-Petitioner,

v.

Kenneth M. JONES, Defendant-Respondent.

Supreme Court

*No. 2003AP2457. Oral argument February 21, 2006.*
*—Decided May 25, 2006.*

2006 WI 53

(Also reported in 714 N.W.2d 155.)

516

For the plaintiff-appellant-petitioner there were briefs by *Kenneth R. Nowakowski, Lisa M. Arent,* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Kenneth R. Nowakowski.*

For the defendant-respondent there was a brief by *Peter M. Koneazny* and *Legal Aid Society of Milwaukee, Inc.,* and oral argument by *Peter M. Koneazny.*

An amicus curiae brief was filed by *Deborah M. Zuckerman, Michael Schuster,* and *American Association of Retired Persons,* Washington, D.C.; *Mary Catherine Fons* and *Fons Law Firm,* Stoughton, on behalf of AARP, Consumer Federation of America, National Association of Consumer Advocates, and National Consumer Law Center.

An amicus curiae brief was filed by *Stephen E. Meili, Sarah N. Mervine,* and *University of Wisconsin Law School,* Madison, on behalf of University of Wisconsin Law School Consumer Law Litigation Clinic.

An amicus curiae brief was filed by *Frank Tuerkheimer* and *University of Wisconsin Law School,* Madison, on behalf of University of Wisconsin Law Professors.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals affirming an order by the circuit court for Milwaukee County, Michael D. Guolee, Judge.[1] The circuit court denied the motion of Wisconsin Auto Title Loans, Inc. to stay judicial proceedings on Kenneth Jones's counterclaims and to compel Kenneth Jones, the borrower, to arbitrate his counterclaims. The court of appeals affirmed the circuit court's order and we affirm the decision of the court of appeals.

---

[1] *Wis. Auto Title Loans, Inc. v. Jones,* 2005 WI App 86, 280 Wis. 2d 823, 696 N.W.2d 214.

¶ 2. The dispositive issue in this case is whether the arbitration provision in the loan agreement between Wisconsin Auto Title Loans and the borrower is unconscionable and, therefore, unenforceable. If the arbitration provision is unconscionable, the circuit court was correct in not staying judicial proceedings or compelling arbitration on the borrower's counterclaims.

¶ 3. The circuit court concluded that the "arbitration provision is unconscionable under general common law contract standards ... and the unconscionability provision of the Wisconsin Consumer Act" and that the provision "is both procedurally and substantively unconscionable according to those standards."[2] Accordingly, the circuit court denied the motion of Wisconsin Auto Title Loans to compel arbitration on the borrower's counterclaims and to stay the court proceedings. The court of appeals also held the arbitration provision unconscionable on procedural and substantive grounds.

¶ 4. We hold that the arbitration provision of the loan agreement between Wisconsin Auto Title Loans and the borrower is unconscionable.

¶ 5. The challenge to the validity of the arbitration provision is to be decided by the courts, even though the arbitration provision in the instant contract provides that the validity of the arbitration provision is to be decided in arbitration. Indeed, Wisconsin Auto Title Loans does not argue that the validity of the arbitration provision must be decided in arbitration.

---

[2] The circuit court also based its decision on Wis. Stat. § 402.302(1) (2003–04), the unconscionability provision of Article 2 of the Wisconsin Uniform Commercial Code (U.C.C.) statute. Article 2 of the U.C.C. does not apply to the contract in the present case.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

¶ 6. The United States Supreme Court has made it clear that although challenges to the validity of a contract as a whole must be made in arbitration if the contract so provides, challenges to an arbitration provision in a contract may be raised in a court proceeding.[3] Like the arbitration agreement in the instant case, the arbitration agreement in *Buckeye Check Cashing, Inc. v. Cardegna,* No. 04–1264, slip op. at 2 (U.S. Feb. 21, 2006), expressly provided that the arbitrator was to decide challenges to the validity of the arbitration provision. Therefore, because this appeal addresses only the unconscionability of the arbitration clause, not the validity of the contract as a whole, the issue is properly before a court and not an arbitrator.

¶ 7. The following factors render the arbitration provision procedurally unconscionable: Wisconsin Auto Title Loans was in the business of providing loans with automobile titles as collateral and was experienced in drafting such loan agreements; Wisconsin Auto Title Loans was in a position of substantially greater bargaining power than the borrower; the borrower was indigent and in need of cash; and the loan agreement was an adhesion contract presented to the borrower on a take-it-or-leave-it basis.

¶ 8. The broad, one-sided, unfair "save and except" parenthetical in the arbitration provision of the loan agreement allowing Wisconsin Auto Title Loans

---

[3] *See Buckeye Check Cashing, Inc. v. Cardegna,* No. 04–1264, slip op. at 4, 8 (U.S. Feb. 21, 2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402–04 (1967) (adopting an approach to the Federal Arbitration Act that "permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable" other than an invalid arbitration provision).

full access to the courts, free of arbitration, while limiting the borrower to arbitration renders the arbitration provision substantively unconscionable. Other factors support this conclusion of law.

¶ 9. Thus a sufficient quantum of both procedural and substantive unconscionability exists to render the arbitration provision invalid. We therefore affirm the decision of the court of appeals and remand the matter to the circuit court for further proceedings on Wisconsin Auto Title Loans' replevin action and the borrower's answer and counterclaims.

I

¶ 10. No evidentiary proceedings were held in the circuit court. The following facts are in the record and are not disputed.

¶ 11. Wisconsin Auto Title Loans is a Wisconsin corporation that provides short-term loans to consumers.

¶ 12. On December 6, 2001, Jones, the borrower, obtained an $800 loan from Wisconsin Auto Title Loans. The borrower and Wisconsin Auto Title Loans entered into a loan agreement, promissory note, and security agreement providing the borrower an $800 loan. We refer to these documents collectively as the "loan agreement."

¶ 13. The loan agreement executed by Wisconsin Auto Title Loans and the borrower is a pre-printed standard form short-term loan agreement provided by Wisconsin Auto Title Loans. To receive the loan, the borrower had to deliver a security interest in his motor vehicle, a 1992 Infiniti, in the form of a title to Wisconsin Auto Title Loans; purchase a $150, one-year membership in Wisconsin Auto Title Loans' "Continental

Car Club"; and pay a $4 filing fee on the motor vehicle title.[4]

¶ 14. The loan agreement calls for a single payment of $1,197.08, due on January 3, 2002, which includes the original $800 loan amount, $243.08 of finance charges, and the $154 the borrower borrowed from Wisconsin Auto Title Loans to pay Wisconsin Auto Title Loans' fees. Wisconsin Auto Title Loans represents in its loan agreement that the annual percentage rate for the finance charge is 300%.

¶ 15. The loan agreement also includes the arbitration provision at issue in the instant case. The arbitration provision broadly states that all disputes, controversies, or claims between the borrower and Wisconsin Auto Title Loans relating to the loan agreement shall be decided by binding arbitration. Nevertheless, the arbitration provision carves out for Wisconsin Auto Title Loans the right to enforce the borrower's payment obligations in the event of default by judicial or other process, including self-help repossession. The arbitration provision provides as follows:

> BORROWER and LENDER agree that the transactions contemplated by, and occurring under, this Agreement involve "commerce" under the Federal Arbitration Act ("FAA") (9 U.S.C. §§ 1 et. seq.). Any and all disputes, controversies or claims (collectively, "claims" or "claim"), whether preexisting, present or future, between the BORROWER and LENDER, or between BORROWER and any of LENDER's officers, directors, employees, agents, affiliates, or shareholders, arising out of or related to this Agreement (*save and except the*

---

[4] Because Jones did not have the funds to pay these fees, the total amount financed was $954. However, no interest was charged on the $154 Jones borrowed to pay Wisconsin Auto Title Loans' fees.

*LENDER's right to enforce the BORROWER's payment obligations in the event of default, by judicial or other process, including self-help repossession)* shall be decided by binding arbitration under the FAA. Any and all claims subject to arbitration hereunder, asserted by any party, will be resolved by an arbitration proceeding which shall be administered by the American Arbitration Association under its Commercial Arbitration Rules (the "Arbitration Rules"), as presently published and existing. However, in the event that BORROWER initiates arbitration, BORROWER shall pay the first $125.00 of the filing fee required by the Arbitration Rules, and LENDER will pay the remaining amount of such fee, as well as any required deposit. In the event LENDER initiates arbitration, LENDER shall pay the entire amount of such filing fee and any required deposit. The parties agree to be bound by the decision of the arbitrator(s). Any issue as to whether this Agreement is subject to arbitration shall be determined by the arbitrator. This agreement to arbitrate will survive the termination of this Agreement. BY AGREEING TO ARBITRATE DISPUTES, YOU WAIVE ANY RIGHT YOU MAY OTHERWISE HAVE HAD TO LITIGATE CLAIMS THROUGH A COURT OR TO HAVE A JURY TRIAL.[5]

¶ 16. The loan agreement also includes a single printed page entitled **REMINDER TO BORROWER**, including seven reminders. The seventh reminder

---

[5] Emphasis added. Capitalization in original.

Paragraph 10 on the back of the loan agreement states that the agreement shall be governed by the laws of Wisconsin including the conflict of laws provision contained in Wis. Stat. § 421.201(5), which provides that the proceedings to recover collateral shall be governed by the law of the state where the collateral is located at the time of recovery. The paragraph also provides that the unenforceability or invalidity of any portion of the agreement shall not render unenforceable or invalid the remaining portions thereof.

states as follows: **"Please note, this is a higher interest loan. You should go to another source if you have the ability to borrow at a rate of interest below 25 percent per month or 300 percent APR."**[6]

¶ 17. At the bottom of this REMINDER is a place for a borrower to sign, indicating that he had read the reminder, understood its contents, and understood that unless he paid the amount due he was placing continued ownership of his automobile at risk. The borrower signed the reminder.

¶ 18. Beginning in January 2002, the borrower made several partial cash payments on the loan, which Wisconsin Auto Title Loans accepted. On April 22, 2002, Wisconsin Auto Title Loans served on the borrower a notice of default on the loan. The notice of default stated that a daily interest rate of $7.84 would be added to the original loan and that in order to avoid litigation and repossession of the car, the borrower had to repay the loan plus interest and penalties on or before May 6, 2002.

¶ 19. The amount owing as of April 22, 2002 was $1,509.72. The amount owing as of May 6, 2002 was stated to be $1,627.32. The notice of default advised the borrower that if he did not pay the total past due including interest by the date stated or make arrangements for payment, Wisconsin Auto Title Loans had **"THE RIGHT TO COMMENCE ACTION FOR YOUR ENTIRE OUTSTANDING BALANCE AND/OR FOR REPOSSESSION OF YOUR MOTOR VEHICLE SECURING THE NOTE WITHOUT FURTHER NOTICE, DEMAND, OR RIGHT TO CURE."**[7]

---

[6] Bold in original.

[7] Capitalization and bold in original.

¶ 20. On May 10, 2002, Wisconsin Auto Title Loans commenced an action to recover possession of the borrower's 1992 Infiniti. The complaint, labeled "small claims-replevin," stated that it sought to enforce a cause of action arising from a consumer credit transaction and that the borrower did not have the right to cure a default under Wis. Stat. § 425.205.

¶ 21. The borrower filed an answer admitting that the consumer credit transaction described in the complaint occurred between the parties. The answer alleged, inter alia, that the full documents were not attached or identified in the complaint (but were attached to the answer), denied Wisconsin Auto Title Loans' calculation of the amount financed, interest, and balance due, and denied any obligation to pay amounts stated in the complaint to exercise the right to redeem the collateral. The answer requested that the complaint be dismissed with prejudice, together with remedies available under Wis. Stat. §§ 425.301–425.311. The answer also sought the relief requested in the counterclaims.

¶ 22. The borrower alleged counterclaims both for himself and as class claims (on behalf of a class of all similarly situated customers of Wisconsin Auto Title Loans). The counterclaims assert that Wisconsin Auto Title Loans willfully and knowingly conceals consumer loan transaction costs to its customers, imposes loan interest and other finance charges without proper disclosures, engages in collection practices without properly advising its customers of their rights and obligations, and imposes unconscionably exorbitant loan rates and charges, and that the loan agreement was unconscionable under Wis. Stat. § 425.107. The borrower made a jury demand for his counterclaims and the case was transferred from small claims to the circuit court.

¶ 23. Wisconsin Auto Title Loans did not answer the counterclaims but moved to compel the borrower to arbitrate the counterclaims in accordance with the terms of the parties' agreement and pursuant to the Federal Arbitration Act and Wis. Stat. § 788.03. Wisconsin Auto Title Loans also moved to stay litigation of the counterclaims pending arbitration. Wisconsin Auto Title Loans did not move to stay litigation with respect to the original replevin complaint.[8] The borrower opposed Wisconsin Auto Title Loans' motion on the grounds that the express terms of the arbitration provision provide for issues relating to default on the loan to be resolved in a judicial forum and that the

---

[8] The written motion is as stated. Wisconsin Auto Title Loans suggested at oral argument that at the motion hearing before the circuit court it may have attempted to modify its motion to stay the borrower's counterclaims into a motion to stay the entire proceeding pending the result of the arbitration. This modification, however, is not reflected in the circuit court's final order on the motion, and we assume that the motion was as the circuit court stated it.

In its briefs on the motion, Wisconsin Auto Title Loans asserted that all claims other than the replevin action were subject to arbitration and that the borrower's counterclaims fell within the arbitration provision.

In his brief, the borrower argued that Wisconsin Auto Title Loans wrongly asserted that he could not bring his defenses and counterclaims before the court.

Wisconsin Auto Title Loans clarified in its reply brief that the borrower did have the right to put forth his defenses to the replevin action, but that he could not bring his counterclaims.

Following an oral hearing on the motion, the circuit court issued an oral ruling on August 20, 2003 denying Wisconsin Auto Title Loans' motion to compel arbitration and stay proceedings. The oral decision and written order treated the motion as written.

arbitration provision is not valid or enforceable under common and statutory law.

¶ 24. The circuit court held the arbitration provision unconscionable. The court of appeals granted Wisconsin Auto Title Loans' request to appeal the nonfinal order of the circuit court and affirmed the circuit court's order denying Wisconsin Auto Title Loans' motion to compel arbitration. Wisconsin Auto Title Loans petitioned for review by this court, and we granted review.

## II

¶ 25. The validity of a contract provision involves determinations of fact and law.[9] A reviewing court will not set aside a circuit court's finding of fact unless clearly erroneous, that is, unless the finding is against the great weight and clear preponderance of the evidence.[10] Whether the facts found by the circuit court render a contractual provision unconscionable is a question of law that a reviewing court determines independently of the circuit court and court of appeals but benefiting from the analysis of these courts.[11]

---

[9] *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983); *Leasefirst v. Hartford Rexall Drugs, Inc.,* 168 Wis. 2d 83, 88, 483 N.W.2d 585 (Ct. App. 1992).

[10] *Wassenaar,* 111 Wis. 2d at 525 (citing *Fields Found., Ltd. v. Christensen,* 103 Wis. 2d 465, 475, 309 N.W.2d 125 (Ct. App. 1981)) (addressing the validity of a stipulated damages clause); *see* Wis. Stat. § 805.17(2).

[11] *Household Utils., Inc. v. Andrews Co.,* 71 Wis. 2d 17, 25, 236 N.W.2d 663 (1976); *Zubek v. Edlund,* 228 Wis. 2d 783, 788, 598 N.W.2d 273 (Ct. App. 1999); *Leasefirst,* 168 Wis. 2d at 89.

## III

¶ 26. We begin by examining the rules of law for determining whether an arbitration provision is unconscionable. Several basic principles come into play.

■

¶ 27. First, contract law is grounded on the principle of freedom of contract, which protects the justifiable expectations of parties to an agreement, free from governmental interference.[12]

[5, 6]

¶ 28. Second, arbitration provisions are presumed to be valid in Wisconsin.[13] An arbitration provision,

---

[12] *Merten v. Nathan,* 108 Wis. 2d 205, 211, 321 N.W.2d 173 (1982) ("The law of contracts is based on the principle of freedom of contract, on the principle that individuals should have the power to govern their own affairs without governmental interference. The courts protect each party to a contract by ensuring that the promises will be performed. The law protects justifiable expectations and the security of transactions.").

[13] *See Kemp v. Fisher,* 89 Wis. 2d 94, 100, 277 N.W.2d 859 (1979) ("Because of this state's policy of encouraging arbitration as an alternative to litigation, arbitration awards are presumed to be valid.").

9 U.S.C. § 2, the coverage provision of the Federal Arbitration Act (FAA), states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Wisconsin Stat. § 788.01 (2003–04), the Wisconsin analogue to the Federal Arbitration Act, states:

however, may be invalid for reasons that apply to all contract provisions.[14]

■

¶ 29. Third, a contract provision is invalid if it is unconscionable.[15] The concept of unconscionability has deep roots in both law and equity but was developed

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part of the contract, or an agreement in writing between 2 or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract. This chapter shall not apply to contracts between employers and employees, or between employers and associations of employees, except as provided in s. 111.10, nor to agreements to arbitrate disputes under s. 101.143(6s) or 230.44(4)(bm).

[14] *See, e.g., United Artists Corp. v. Odeon Bldg.*, 212 Wis. 150, 153–55, 248 N.W. 784 (1933) (arbitration provision that violated Sherman Anti-Trust Act is invalid); *Appleton Papers, Inc. v. Home Indem. Co.*, 2000 WI App 104, ¶ 4, 235 Wis. 2d 39, 612 N.W.2d 760 (mandatory arbitration clause not approved by insurance commissioner is invalid); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 679 (Cal. 2000) (arbitration agreement may be invalidated for same reasons as other contracts).

[15] *See, e.g.*, 8 Richard A. Lord, *Williston on Contracts* § 18.13, at 87–88 (4th ed. 1998); John E. Murray, Jr., *Unconscionability: Unconscionability*, 31 U. Pitt. L. Rev. 1 (1969); 2 Restatement (Second) Contracts § 208 (1979) (a court may refuse to enforce an unconscionable term or contract). Unconscionability has been codified in various statutes. Wis. Stat. § 402.302 (under the Wisconsin U.C.C., "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . . ."); Wis. Stat. § 425.107 (Under the Wisconsin Consumer Protection Act, "[w]ith respect to a consumer credit transaction, if the court as a matter of law

primarily in equity.[16] For a contract or a contract provision to be declared invalid as unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable.[17]

¶ 30. Fourth, a party seeking to invalidate a provision in a contract (here the borrower) has the burden of proving facts that justify a court's reaching the legal conclusion that the provision is invalid.[18]

¶ 31. Unconscionability is an amorphous concept that evades precise definition.[19] Indeed, it has been said that "[i]t is not possible to define unconscionability. It is not a concept but a determination to be made in light of a variety of factors not unifiable into a formula."[20]

---

finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall . . . either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.").

[16] 7 Joseph M. Perillo, *Corbin on Contracts* § 29.2 (rev. ed. 2002). For a discussion of unconscionability in other legal systems, see Symposium, *Unconscionability Around the World: Seven Perspectives on the Contractual Doctrine*, 14 Loy. L.A. Int'l & Comp. L. Rev. 435 (1992).

[17] *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 27, 259 Wis. 2d 587, 657 N.W.2d 411; *Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 117 Wis. 2d 587, 602, 345 N.W.2d 417 (1984).

[18] *See Wassenaar*, 111 Wis. 2d at 526 (burden of proof is on employee asserting that a liquidated damages provision is an unenforceable penalty).

[19] 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.28, at 581 (3d ed. 2004); 7 Perillo, *supra* note 16, § 29.4, at 387–88; 8 Lord, *supra* note 15, § 18.7, at 46.

[20] 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 4–3, at 213 (4th ed. 1995) (emphases removed).

¶ 32. We have made several attempts at delineating what is meant by unconscionability. The underlying principle that has evolved in such attempts is that "[t]he principle is one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."[21] Unconscionability has often been described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party.[22]

¶ 33. A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis.[23] The more substantive unconscionability present, the less procedural unconscionability is re-

[21] 8 Lord, *supra* note 15, § 18.8, 49–50 (quoting Uniform Commercial Code § 2–302, cmt. *1*, 1A U.L.A. 344 (2004)) (internal quotation marks omitted).

[22] *Deminsky,* 259 Wis. 2d 587, ¶ 27; *Discount Fabric House,* 117 Wis. 2d at 601; *Leasefirst,* 168 Wis. 2d at 89; Official Uniform Commercial Code § 2–302 cmt. *1*, 1A U.L.A. 344 (2004); 1 Farnsworth, *supra* note 19, § 4.28, at 582; 7 Perillo, *supra* note 16, § 29.4, at 46–47; 2 Restatement (Second) of Contracts § 208, cmt. *d*, at 109 (1979).

[23] *Deminsky,* 259 Wis. 2d 587, ¶ 27; *Discount Fabric House,* 117 Wis. 2d at 602.

Wisconsin Auto Title Loans calls our attention to *Battle v. Nissan Motor Acceptance Corp.,* No. 05–CV–00669 (E.D. Wis. March 9, 2006) (decision and order granting in part and denying in part defendant's motion to compel arbitration, denying motion to stay proceedings, setting scheduling conference, and requiring Rule 26 report). In *Battle,* the district court for the Eastern District of Wisconsin determined that an arbitration provision was not unconscionable. *Battle* is factually distinguishable from the instant case.

quired, and vice versa.[24] A court will weigh all the elements of unconscionability and may conclude unconscionability exists because of the combined quantum of procedural and substantive unconscionability.[25] "To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability."[26]

¶ 34. Determining whether procedural unconscionability exists requires examining factors that bear upon the formation of the contract, that is, whether there was a "real and voluntary meeting of the minds" of the contracting parties.[27] The factors to be considered include, but are not limited to, age, education, intelli-

---

[24] *Discount Fabric House,* 117 Wis. 2d at 602; *see also* 1 Farnsworth, *supra* note 19, § 4.28, at 585 ("Most cases of unconscionability involve a combination of procedural and substantive unconscionability, and it is generally agreed that if more of one is present, then less of the other is required."); 8 Lord, *supra* note 15, § 18:10, at 62 ("It has often been suggested that a finding of a procedural abuse, inherent in the formation process, must be coupled as well with an unfair or unreasonably harsh contractual term which benefits the drafting party at the other party's expense.").

[25] 1 Farnsworth, *supra* note 19, § 4.28, at 585.

[26] *Discount Fabric House,* 117 Wis. 2d at 602; *see also* Restatement (Second) of Contracts § 208 cmt. *d* (1974) ("[G]ross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may . . . show that the weaker party had no meaningful choice, no real alternative, . . . to the unfair terms."); *see* 1 Farnsworth, *supra* note 19, § 4.28, at 585.

[27] *Deminsky,* 259 Wis. 2d 587, ¶ 27; *Discount Fabric House,* 117 Wis. 2d at 602 (quoting *Johnson v. Mobil Oil Corp.,* 415 F. Supp. 264, 268 (E.D. Mich. 1976)); *Leasefirst,* 168 Wis. 2d at 89–90.

gence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.[28]

¶ 35. Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. Wisconsin courts determine whether a contract provision is substantively unconscionable on a case-by-case basis.[29]

As Professor Arthur Allen Leff described it, procedural unconscionability refers to "bargaining naughtiness." Arthur Allen Leff, *Unconscionability and the Code—The Emperor's New Clause*, 115 U. Pa. L. Rev. 485, 487 (1967) (quoted in 1 White & Summers, *supra* note 20, § 4–3, at 213).

[28] *Discount Fabric House,* 117 Wis. 2d at 602 (quoting *Johnson,* 415 F. Supp. at 268); *see also* Wis. Stat. § 425.107 (unconscionability factors under the Wisconsin Consumer Act).

[29] *See Pietroske, Inc. v. Globalcom, Inc.,* 2004 WI App 142, ¶ 6, 275 Wis. 2d 444, 685 N.W.2d 884 (holding, in the context of a forum-selection provision, that "[t]he balancing of procedural and substantive unconscionability requires courts to consider each questionable forum-selection clause on a case-by-case basis and precludes the development of a bright-line rule").

*See also* 8 Lord, *supra* note 15, § 18.8, at 48 ("The framers of the [Uniform Commercial] Code naturally expected the courts to . . . pour content into [the unconscionability doctrine] on a case-by-case basis."); Uniform Consumer Credit Code, § 5.108 cmt. *3,* 7A U.L.A. 170 (1974) ("The particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others."); Restatement (Second) of Contracts § 208 cmt. *a* (1974) ("The determination

¶ 36. No single, precise definition of substantive unconscionability can be articulated. Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party.[30] The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are "commercially reasonable,"[31] that is, whether the terms lie outside the limits of what is reasonable or acceptable.[32] The issue of unconscionability is considered "in the light of the general commercial background and the commercial needs."[33]

¶ 37. We turn now to the instant case to determine whether the arbitration provision in the loan agreement is unconscionable.

---

that a contract is or is not unconscionable is made in light of its setting, purpose and effect.").

[30] 8 Lord, *supra* note 15, § 18.10, at 57.

[31] *Discount Fabric House,* 117 Wis. 2d at 602 (quoting *Johnson,* 415 F. Supp. at 268).

[32] *See generally* 8 Lord, *supra* note 15, § 18.10, at 48–49, which quotes the comments to the Uniform Commercial Code unconscionability provision, § 2–302:

> The principle is one of prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power. The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the term or contract involved is so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.

Uniform Commercial Code § 2–302 cmt. 1, 1A U.L.A. 344 (2004).

[33] *See generally* 8 Lord, *supra* note 15, § 18.5, at 22–28 (explaining the extension of unconscionability beyond the U.C.C.).

### A

¶ 38. Here we address the issue of procedural unconscionability. We first examine the circuit court's findings of fact and then determine whether the facts of record support the conclusion of law regarding procedural unconscionability.

¶ 39. Wisconsin Auto Title Loans argues that the circuit court's findings of fact are clearly erroneous, that is, they are not supported by evidence in the record or reasonable inference therefrom. Wisconsin Auto Title Loans asserts that the circuit court failed to hold a required evidentiary hearing and that the circuit court erroneously based its findings of fact on the pleadings and trial briefs, not evidence.[34] Wisconsin Auto Title Loans asserts that the only evidence the borrower provided was the contract itself; he submitted no affidavit evidence establishing the particulars of his situation.[35]

¶ 40. The circuit court did not hold an evidentiary hearing. Wisconsin Auto Title Loans bases its argument that the lack of an evidentiary hearing is fatal to a procedural unconscionability determination on *Datronic Rental Corp. v. DeSol, Inc.,* 164 Wis. 2d 289, 474 N.W.2d 780 (Ct. App. 1991). In that case, the court of

---

[34] The court of appeals concluded that because Wisconsin Auto Title Loans did not suggest an evidentiary hearing in the circuit court and did not mention the absence of such a hearing until its reply brief in the court of appeals, Wisconsin Auto Title Loans waived its objections to the circuit court's factual findings supporting its determination of procedural unconscionability. *Wis. Auto Title Loans,* 280 Wis. 2d 823, ¶ 17.

[35] Plaintiff-Appellant-Petitioner's Brief and Appendix at 22.

537

appeals stated that "an evidentiary hearing is required to enable the court to make the necessary findings of fact to support a conclusion that a clause is unconscionable."[36] Although an evidentiary hearing is ordinarily required as a basis for the necessary findings of fact, an evidentiary hearing may not always be necessary to support a determination of unconscionability.

¶ 41. Facts may, under certain circumstances, be determined without an evidentiary hearing. For example, facts may be deemed agreed upon when they are not denied by answer.[37] Parties may stipulate to the facts.[38] A court may take judicial notice of certain facts.[39] A circuit court may make reasonable inferences

[36] *Datronic Rental Corp. v. DeSol, Inc.,* 164 Wis. 2d 289, 294, 474 N.W.2d 780 (Ct. App. 1991); *see Leasefirst,* 168 Wis. 2d at 89–90 (citing *Datronic,* 164 Wis. 2d at 294).

The unconscionability provision of Wisconsin's U.C.C., Wis. Stat. § 402.302, states that "the parties shall be afforded a reasonable opportunity to present evidence as to [the contract's] commercial setting, purpose and effect to aid the court in making the determination."

The unconscionability determination in the instant case is not based on the U.C.C.

[37] Wis. Stat. § 802.02(4) ("Averments in a pleading to which a responsive pleading is required, other than those as to the fact, nature and extent of injury and damage, are admitted when not denied in the responsive pleading . . . ."); *Mitchell Bank v. Schanke,* 2004 WI 13, ¶ 34, 268 Wis. 2d 571, 676 N.W.2d 849 (under § 802.02(4), facts not denied are deemed admitted).

[38] *State v. Lombard,* 2004 WI App 52, ¶ 25, 271 Wis. 2d 529, 678 N.W.2d 338.

[39] Ch. 902, Wis. Stats. (Rule) (2003–04); *Fringer v. Venema,* 26 Wis. 2d 366, 372–73, 132 N.W.2d 565 (1965).

from the facts of record.[40] Thus, an evidentiary hearing is not required so long as the record contains facts of record and reasonable inferences therefrom sufficient to support a circuit court's findings of fact from which a court may reach a decision about procedural unconscionability.

¶ 42. Thus, we must examine the record in the instant case for the facts of record and the reasonable inferences to be drawn therefrom and determine whether these facts and inferences are sufficient to support a conclusion of law regarding whether the arbitration provision is procedurally unconscionable.

¶ 43. The circuit court made the following findings of fact relating to procedural unconscionability:

1. The borrower obtained a loan from Wisconsin Auto Title Loans using his automobile as collateral;

2. The loan agreement contained various conditions and requirements;

3. The loan was not repaid to Wisconsin Auto Title Loans' satisfaction;

4. Wisconsin Auto Title Loans is experienced in the business of supplying loans for which title to an automobile is provided as collateral;

5. Wisconsin Auto Title Loans is experienced in drafting loan agreements;

6. Wisconsin Auto Title Loans was in a position of greater bargaining power than the borrower;

7. The loan agreement was presented to the borrower in a "take-it-or-leave-it" manner;

8. The borrower was unemployed and needed the funds for household expenses; and

---

[40] *See Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727 (1982) (quoting *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977)).

9. The terms of the arbitration agreement were not explained to the borrower.

¶ 44. The first two findings of fact stated above are based on documents in the record. Specifically, that the borrower obtained a loan from Wisconsin Auto Title Loans including various conditions and requirements and using his automobile as collateral are facts set forth in the documents that both parties agree make up the loan agreement.

¶ 45. The third finding of fact, that the loan was not repaid to Wisconsin Auto Title Loans' satisfaction, is evident from Wisconsin Auto Title Loans' filing the action.

¶ 46. The fourth finding of fact, that Wisconsin Auto Title Loans is experienced in the business of supplying loans with title to an automobile as collateral, is the circuit court's reasonable inference from the documents in the records. The circuit court could have reasonably made this inference from the name of the company and from its "tag line" appearing on the documents of record. The tag line reads, "The Cash You Need . . . Fast" (ellipses in original).

¶ 47. The fifth finding of fact, that Wisconsin Auto Title Loans is experienced in drafting loan agreements, is apparent from the loan agreement forms in the record. The loan agreement is identified as "Contract #8429," implying that Wisconsin Auto Title Loans has engaged in a substantial number of loan transactions. Furthermore, the loan agreement, the Continental Car Club membership documents, and the "Reminder to Borrower" are all pre-printed, standardized documents, except for the relevant dollar amounts and due dates, Wisconsin Auto Title Loans' name and address, the borrower's name and address, the pertinent information about the borrower's motor vehicle, and

the signatures. The only insertions typed on the forms are to complete the forms for the individual involved.[41]

¶ 48. It would not have been reasonable for the circuit court to infer that the borrower showed up at the office of Wisconsin Auto Title Loans with his own pre-printed forms. The only reasonable inference the circuit court could have made was the inference it did make, namely that Wisconsin Auto Title Loans drafted the pre-printed loan agreement or determined which printed standardized forms to use.

¶ 49. The circuit court could have reasonably inferred the sixth finding of fact, namely that Wisconsin Auto Title Loans was in a position of greater bargaining power, from the facts in the record. The lender is experienced in the business of making short-term auto loans, while the borrower is indigent.[42] It was reason-

---

[41] It is unclear from the record whether the typing was done with a typewriter or whether the document was stored in a computer and accessed by Wisconsin Auto Title Loans' agent, who filled in the blanks and printed the loan agreement.

[42] Disparity in bargaining power alone is not necessarily sufficient to establish procedural unconscionability. *See Discount Fabric House,* 117 Wis. 2d at 602 (quoting *Johnson,* 415 F. Supp. at 268); *see also* 2 Restatement (Second) Contracts § 208 cmt. d (1979) ("A bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party. But gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms."); 7 Perillo, *supra* note 16, § 29.4, at 392 ("Uniform Commercial Code § 2–302 is not intended to cause a 'disturbance of allocation of risks because of superior bargaining power,' but cases . . . make it

able for the circuit court to infer a significant disparity between the parties' bargaining power and commercial sophistication.

¶ 50. Although the specifics of the borrower's financial situation are not in the record, the record and reasonable inferences drawn therefrom make it clear that the borrower was indigent, needed money, and was in a weak bargaining position. According to the record, six months after the execution of the loan agreement, the borrower executed an affidavit and petitioned the circuit court for waiver of the fee to remove the case from small claims court to circuit court. The circuit court granted the fee waiver, thus recognizing that "because of poverty" the borrower "is unable to pay the costs" of the court proceeding.[43] In addition, it seems unlikely that a person with financial means and a

_____

clear that inequality of bargaining power is an important element in an unconscionability determination." (footnote omitted)); 1 Farnsworth, *supra* note 19, § 4.28, at 583–84 (listing unequal bargaining power as one of several factors to be considered under procedural unconscionability); 8 Lord, *supra* note 15, § 18.5, at 29–30 (suggesting that unequal bargaining power is but one element of procedural unconscionability); 1 Patricia F. Fonseca & John R. Fonseca, *Williston on Sales* § 11:11, at 608 (5th ed. rev. vol. 2005) (listing unequal bargaining power as one of several elements that go into determination of procedural unconscionability); 1 White & Summers, *supra* note 20, § 4–3, at 217 (suggesting that unequal bargaining power is only one element, albeit often a critical element, of a procedural unconscionability determination); 1 William D. Hawkland, *Hawkland UCC Series* § 2–302:3, at Art. 2–362 (2001) (procedural unconscionability requires looking at the totality of the circumstances); 2A Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 2–302:98, at 280 (totality of the circumstances test applies to unconscionability).

[43] Wis. Stat. § 814.29.

strong bargaining position would agree to borrow money on the terms of the borrower's loan with Wisconsin Auto Title Loans.

¶ 51. Moreover, the Reminder to Borrower document (which is part of the loan agreement) advised the borrower that he was entering into a "higher interest loan" and that he should go to another source if he had the ability to borrow at a rate of interest below 25% per month and 300% per annum. From this fact, the circuit court drew the reasonable inference that the borrower had to sign the loan agreement as presented. The borrower apparently lacked a meaningful, alternative means to obtain a more favorable loan.

■

¶ 52. The seventh finding of fact, that the loan agreement was presented to the borrower in a "take-it-or-leave-it" manner, may be reasonably inferred by the circuit court from all the circumstances described above. The pre-printed form contract involved in the present case is what is known in law as an adhesion contract, that is, a contract entirely prepared by one party and offered to another who does not have the time or the ability to negotiate about the terms.[44] In other

---

[44] "A contract of adhesion is generally found under circumstances in which a party has, in effect, no choice but to accept the contract offered, often where the buyer does not have the opportunity to do comparative shopping or the organization offering the contract has little or no competition." *Deminsky,* 259 Wis. 2d 587, ¶ 31 (citing *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 116 Wis. 2d 206, 212–13, 341 N.W.2d 689 (1984).

*See, e.g., Sugden v. Bock,* 2002 WI App 49, ¶ 15 n.5, 251 Wis. 2d 344, 641 N.W.2d 693 (quoting *Insurance Law—Extension of Coverage by Estoppel,* 1970 Wis. L. Rev. 1234, 1240 (1970) (suggesting that insurance contracts are the "hallmark of a contract of adhesion" and describing the contracts as "entirely

words, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."[45]

¶ 53. Standardized form contracts are suspect because they may indicate the inequality of bargaining power between the parties to the contract.[46] Ordinarily, however, adhesion contracts are valid.[47] The court of appeals has correctly acknowledged that not every transaction is individually negotiated. Standardized form contracts are common and allow for savings in transaction costs.[48] Nonetheless, one of the attributes

prepared by the insurer and sold to buyers who rarely have the time or the ability to fully understand its complicated provisions. This inequality between the parties to the insurance contract, combined with the fact that insurance is considered a necessity by most people, creates a relationship of special trust and confidence between the insurer and the insured." (internal quotation marks omitted))).

[45] *ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002) (quoting *Armendariz*, 6 P.3d at 689) (discussing unconscionability under California law).

[46] Arthur Allen Leff, *Unconscionability and the Crowd—Consumers and the Common Law Tradition*, 31 U. Pitt. L. Rev. 349, 349 (1970). When a standardized contract is consistent with the terms the parties actually negotiated, no inequality of bargaining power or procedural unconscionability arises. 8 Lord, *supra* note 15, § 18.13, at 84–85.

[47] *Clark Oil & Ref. Corp. v. Leistikow*, 69 Wis. 2d 226, 239, 230 N.W.2d 736 (1975).

[48] *Pietroske, Inc.*, 275 Wis. 2d 444, ¶ 9.

*See* 7 Perillo, *supra* note 16, § 29.10, at 416 ("There is nothing inherently wrong with a contract of adhesion. Most of the transactions of daily life involve such contracts that are

of contracts of adhesion is that they are typically offered on a take-it-or-leave-it basis with no opportunity for negotiation or modification. Thus, the circuit court reasonably inferred from the unmodified, pre-printed forms and the unequal bargaining power of the parties that the loan agreement in the instant matter was a take-it-or-leave-it contract presented by Wisconsin Auto Title Loans with no opportunity for negotiation or modification by the borrower.

¶ 54. The eighth finding of fact, namely that the borrower was unemployed and needed funds for household expenses, is not supported by evidence in the record and cannot reasonably be inferred from the record.

¶ 55. The ninth finding of fact, namely that the terms of the arbitration agreement were not explained to the borrower, is not supported by evidence in the record and cannot reasonably be inferred from the record.

¶ 56. The eighth and ninth findings of fact are derived from the pleadings and the borrower's trial brief.

---

drafted by one party and presented on a take it or leave it basis. They simplify standard transactions . . . .").

*See also* 1 Farnsworth, *supra* note 19, § 4.28 at 585–86 (fact that a contract is one of adhesion is not fatal); 8 Lord, *supra* note 15, § 18:13, at 83–85 ("[A] form contract will not generally be found unconscionable if there were negotiations on the essential term at issue, such as price."); 1 Fonseca & Fonseca, *supra* note 42, § 11:12, at 610 (case law indicates that a form contract alone is not enough to support a determination of substantive unconscionability; other factors must also be present); 1 White & Summers, *supra* note 20, § 4–3, at 217 (arguing that not all form or "fine print" contracts should be held unconscionable under § 2–302 of the U.C.C.).

¶ 57. Thus, circuit court's findings of fact 1 through 7 are supported by the evidence in the record, and these findings lead to our conclusion of law (and the conclusion of law reached by the court of appeals and circuit court) that a quantum of procedural unconscionability has been established. The formation of the contract was a product of the parties' unequal bargaining power and did not reflect a real and voluntary meeting of the minds of the contracting parties.[49]

¶ 58. Wisconsin Auto Title Loans points out that the loan agreement is short and written in plain English. Perhaps so, but the fact that a contract is written in plain English does not alone defeat a showing of a quantum of procedural unconscionability.[50] There are numerous other factors, such as age and intelligence, that go to procedural unconscionability that are not present in the record. However, no single factor is required to establish procedural unconscionability. We are satisfied that the evidence on the record, even without some of the other factors mentioned in our cases, supports our conclusion that there was procedural unconscionability in the formation of the loan agreement.[51]

B

¶ 59. We now address whether the arbitration provision is substantively unconscionable. Even if the

---

[49] *Discount Fabric House,* 117 Wis. 2d at 602 (quoting *Johnson,* 415 F. Supp. at 268); *Leasefirst,* 168 Wis. 2d at 89–90.

[50] *See Pietroske, Inc.,* 275 Wis. 2d 444, ¶ 9 (treating fact that contract was written in "plain English" as a factor in determining no procedural unconscionability).

[51] *See Discount Fabric House,* 117 Wis. 2d at 602.

arbitration provision is procedurally unconscionable, it may be enforced if it is not substantively unconscionable. Substantive unconscionability focuses on the one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue.

¶ 60. Substantive unconscionability has usually been successfully raised against commercial interests dealing with consumers, especially poor and disadvantaged consumers.[52] In many of the cases in which a contract provision has been held to be substantively unconscionable, a creditor has unduly restricted a debtor's remedies or unduly expanded its own remedial rights.[53] The instant case seems to be one in which the creditor has unduly restricted the debtor's remedies relative to those available to the creditor. We begin our discussion of substantive unconscionability by analyzing the scope of the arbitration provision.

¶ 61. The arbitration provision in the loan agreement broadly proclaims that any and all disputes, controversies, or claims between Wisconsin Auto Title Loans (or its employees or affiliates) and the borrower —whether pre-existing, present, or future—arising out of the loan agreement must be decided by binding arbitration. A parenthetical phrase "save[s] and except[s]" from binding arbitration Wisconsin Auto Title Loans' "right to enforce the borrower's payment obligations in the event of default, by judicial or other process, including self-help repossession."

---

[52] 1 Farnsworth, *supra* note 19, § 4.28, at 588–89; 1 White & Summers, *supra* note 20, § 4–2, at 210.

[53] 1 White & Summers, *supra* note 20, § 4–4, at 217, § 4–6, at 223–29.

¶ 62. Wisconsin Auto Title Loans justifies this "save and except" parenthetical as necessary to comply with Wis. Stat. §§ 425.203, 425.205, and 425.206, which limit non-judicial enforcement of actions to take possession of collateral. Wisconsin Auto Title Loans argues that these statutes protect consumers, not lenders. Thus, Wisconsin Auto Title Loans argues that the exception in the arbitration provision requiring that possession of collateral be taken in circuit court actually benefits the borrower. We are not convinced by this justification of the one-sided arbitration provision.

¶ 63. The "save and except" parenthetical in the arbitration provision exempting Wisconsin Auto Title Loans from binding arbitration extends further than allowing Wisconsin Auto Title Loans to bring a replevin action in circuit court. Not only may Wisconsin Auto Title Loans use a circuit court to replevy the loan collateral (the borrower's automobile), but the arbitration provision also allows Wisconsin Auto Title Loans to go to circuit court to enforce the borrower's payment obligations in the event of default.

¶ 64. Wisconsin Auto Title Loans has by the arbitration provision "saved and excepted" from binding arbitration all its disputes, controversies, and claims *against* the borrower. Wisconsin Auto Title Loans could, under the exception to the arbitration provision, use a circuit court to obtain a deficiency judgment. Wisconsin Auto Title Loans is also permitted by the exception to use any other procedure that a lender might pursue to satisfy the borrower's obligation under the loan agreement. In contrast, the arbitration provision relegates all the borrower's claims to arbitration. The borrower is required to submit all his disputes, controversies, and claims against Wisconsin Auto Title Loans to binding arbitration.

548

¶ 65. That Wisconsin Auto Title Loans has chosen to bring only a replevin action in the circuit court in the instant case is of no moment. The issue is the substantive unconscionability of the arbitration provision, which "saves and excepts" all claims of Wisconsin Auto Title Loans from arbitration.

¶ 66. The exception to the arbitration provision is far too broad and one-sided, granting Wisconsin Auto Title Loans a choice of forum—arbitration or the circuit court—for its claims, while permitting the borrower to raise claims only before an arbitrator. The doctrine of substantive unconscionability limits the extent to which a stronger party to a contract may impose arbitration on the weaker party without accepting the arbitration forum for itself.[54]

¶ 67. Wisconsin Auto Title Loans contends that one-sidedness of the arbitration provision does not necessarily lead to the conclusion that the provision is unenforceable. Several courts have upheld one-sided arbitration provisions against unconscionability challenges.[55]

---

[54] *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz*, 6 P.3d at 692) (" '"Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself.' " (omission in *Ting*)).

[55] *See, e.g., Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183–84 (3d Cir. 1999) (under Pennsylvania law, "the mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable" for unconscio-

¶ 68. While we appreciate that a one-sided arbitration provision may not be unconscionable under the facts of all cases, we conclude that the overly one-sidedness of the arbitration provision at issue in the instant case renders the arbitration provision substantively unconscionable. Many courts have reached a similar conclusion of unconscionability when one-sided arbitration provisions require the weaker party to arbitrate.[56]

---

nability); *Stenzel v. Dell, Inc.,* 870 A.2d 133, 143–45 (Maine 2005) (under Texas law, entirely one-sided arbitration agreement that also prohibited class actions not unconscionable); *Walther v. Sovereign Bank,* 872 A.2d 735 (Md. 2005) (arbitration provision in loan agreement not unconscionable, even though only the mortgagor was permitted to go to court, it prohibited class action claims, arbitration fees were not disclosed, and mortgagee was required to waive right to jury trial); *Pridgen v. Green Tree Fin. Servicing Corp.,* 88 F. Supp. 2d 655, 658–59 (S.D. Miss. 2000) (under Mississippi law, an "arbitration clause is not unenforceable solely because it is one-sided."); *Lackey v. Green Tree Fin. Corp.,* 498 S.E.2d 898, 904–05 (S.C. Ct. App. 1998) (arbitration provision that carved out certain judicial proceedings for lender, but relegated counterclaims in those proceedings to arbitration not unconscionable).

*See* cases cited at 1 Farnsworth, *supra* note 19, § 4.28, at 592 n.49.

[56] *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 169 (5th Cir. 2004) (arbitration provision requiring any claim customer is likely to bring be raised in arbitration while allowing cellular telephone provider to raise its claims against customer in court unconscionable under Louisiana law); *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 784–86 (9th Cir. 2002) (holding unconscionable under California law employment contract compelling arbitration of claims employee most likely to bring against employer, but not claims employer most likely to bring against employee, and requiring first $125 of arbitration fees to be paid by employee); *ACORN,* 211 F. Supp. 2d at 1170–73 (holding uncon-

¶ 69. The unconscionable one-sidedness of the arbitration provision is sufficient to hold the arbitra-

scionable under California law arbitration provision that prohibited class actions, required the result of the arbitration provision be confidential, and contained judicial carve-out only for party that drafted contract); *E-Z Cash Advance, Inc. v. Harris*, 60 S.W.3d 436, 441 (Ark. 2001) (arbitration provision in "payday loan" that retained judicial remedies for lender unconscionable because "[t]here is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system"); *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 854 (Cal. Ct. App. 2001) (holding unconscionable arbitration provision that applied to all claims brought by borrower in "reverse mortgage" contract, but not claims brought by the drafting party, the lender); *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. Dist. Ct. App. 2004) (arbitration provision requiring purchaser of automobile to resolve all claims in arbitration but not requiring dealer to resolve any claims in arbitration unconscionable); *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 866 (Ohio 1998) (arbitration in consumer credit agreement that required all disputes "other than judicial foreclosures and cancellations regarding real estate security" to be resolved in arbitration and required non-drafting borrower to pay arbitration fee unconscionable as to the borrower); *Iwen v. U.S. West Direct*, 977 P.2d 989, 995–96 (Mont. 1999) (in contract between advertiser and phone book publisher, arbitration provision that required all claims be arbitrated "other than an action by Publisher for the collection of the amounts due under this Agreement" unconscionable because of the imbalance in the right to seek a judicial remedy); *Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643, 665 (Pa. Super. Ct. 2002) (holding that reservation by mortgagee of access to the courts for itself to the exclusion of mortgagor unconscionable absent any "business realities" compelling such a provision in arbitration agreement); *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004) (arbitration provision that provides "a judicial forum for practically all claims" that automobile dealer could have against purchaser but assigning any claims by

551

tion provision substantively unconscionable, and we so hold. We should, however, comment that other factors compound the substantive unconscionability.

¶ 70. Requiring the borrower to litigate similar or identical claims before both a circuit court and an arbitrator is burdensome on the borrower. Wisconsin Auto Title Loans concedes that, under the loan agreement, the borrower may bring any affirmative defenses to the replevin action in circuit court. Thus, the borrower is permitted to argue before the circuit court that the replevin action cannot be sustained because the loan agreement is unconscionable. However, if the borrower wishes to maintain a substantive cause of action based on the same theory of unconscionability, the arbitration provision requires the borrower to bring such an action before an arbitrator.[57]

¶ 71. The possibility of dual forums for intertwined defenses and counterclaims imposes an unnec-

the purchaser to arbitration unconscionable); *Arnold v. United Cos. Lending Corp.,* 511 S.E.2d 854, 861–62 (W.Va. 1998) (holding unconscionable an arbitration provision in a consumer lending contract that "bind[s] the consumer to relinquish his or her right to a day in court and virtually all substantive rights, while the lender retains the right to a judicial forum for purposes of collection and foreclosure proceedings, deficiency judgments, and all other procedures which the lender may pursue to acquire title to the borrower's real or personal property.").

*See* cases cited at 1 Farnsworth, *supra* note 19, § 4.28, at 592 n.48.

[57] *See A.B.C.G. Enters., Inc. v. First Bank Se., N.A.,* 184 Wis. 2d 465, 481–82, 515 N.W.2d 904 (1994) (requiring that counterclaims that arise as part of the same transaction and would defeat the plaintiffs' rights established as part of the initial action be brought in the same proceeding as the original claims).

essary and undue burden on the borrower; to redeem his property and also obtain a statutory remedy, he must litigate the same issue twice. Yet Wisconsin Auto Title Loans need not litigate in two forums to vindicate its rights. We agree with the court of appeals, which has stated: "[U]ncontemplated inconvenience . . . is a factor in deciding whether [a] clause is unconscionable."[58]

¶ 72. Further supporting our conclusion that the broad one-sided arbitration provision is substantively unconscionable is the fact that the provision "saves and excepts" a self-help remedy for Wisconsin Auto Title Loans. Wisconsin Stat. § 425.206 does not permit self-help repossession in the instant case; a judicial order is required. Thus, the arbitration provision includes a remedy that is prohibited by statute. While this defect alone might not be enough to render the arbitration provision substantively unconscionable, it does support such a determination.

¶ 73. Moreover, although the arbitration provision is silent on class actions, the parties assume the borrower must pursue his claims individually in arbitration and not as the representative of a class.[59] Even if it were possible to pursue class claims in arbitration, and we do not address this issue, the relief available to the putative class appears to be substantially broader in

---

[58] *Leasefirst,* 168 Wis. 2d at 90. Dual-forum litigation is not only inconvenient but may raise difficult questions of issue and claim preclusion. *Manu-Tronics, Inc. v. Effective Mgmt. Sys., Inc.,* 163 Wis. 2d 304, 311, 471 N.W.2d 263 (Ct. App. 1991) (citing *Dehnart v. Waukesha Brewing Co.,* 21 Wis. 2d 583, 589, 124 N.W.2d 664 (1963), regarding claim preclusion (res judicata) and arbitration awards).

[59] Courts have struck down arbitration provisions precluding class representation. *See* cases cited at 1 Farnsworth, *supra* note 19, § 4.28, at 593 n.52.

circuit court than in arbitration. Under the Wisconsin Consumer Act, a class action may be maintained for injunctive relief.[60] No such injunctive relief is available in arbitration. The arbitration provision, therefore, limits the meaningful remedies available to the borrower.[61]

¶ 74. Finally, the arbitration provision requires that the borrower pay the first $125 of any filing fee for arbitration. This fee is apparently assessed without regard for the borrower's indigence at the time he files an arbitration action. Although a $125 filing fee alone is unlikely to result in a conclusion of substantive unconscionability, it is significant in the context of short-term high-interest loan agreements because the borrowers are, in all likelihood, strapped for cash. The arbitration fee supports our conclusion that the arbitration provi-

[60] Wis. Stat. § 426.110(4)(e).

[61] Many other courts have found unconscionable express prohibitions on class actions claims. *See, e.g., Ting,* 319 F.3d at 1150 (under California law, class action ban in contract of adhesion unconscionable); *Comb v. PayPal, Inc.,* 218 F. Supp. 2d 1165, 1175–76 (N.D. Cal. 2002) (express prohibition on "consolidation of claims" in arbitration agreement unconscionable under California law); *ACORN,* 211 F. Supp. 2d at 1170–71 (prohibition in arbitration provision on class wide relief unconscionable under California law); *Leonard v. Terminix Int'l Co., L.P.,* 854 So.2d 529, 538–39 (Ala. 2002) (arbitration clause prohibiting class action unconscionable); *Szetela v. Discover Bank,* 118 Cal. Rptr. 2d 862, 866–68 (Cal. Ct. App. 2002) (prohibition in arbitration provision on class wide relief unconscionable); *State ex rel. Dunlap v. Berger,* 567 S.E.2d 265, 278–80 (W. Va. 2002) (exculpatory language in arbitration provision preventing class relief unconscionable). *But see Vernon v. Drexel Burnham & Co.,* 125 Cal. Rptr. 147 (Cal. Ct. App. 1975) (under California law, upholding an implied prohibition on the "consolidation of claims" in arbitration provision).

sion is substantively unconscionable. Courts have held that fee splitting in an arbitration provision renders the arbitration provision unconscionable.[62]

¶ 75. We conclude that the broad, one-sided, unfair "save and except" parenthetical allowing Wisconsin Auto Title Loans full access to the courts, free of arbitration, while requiring the borrower to arbitrate, renders the arbitration provision substantively unconscionable. Several other factors support this conclusion of law.

¶ 76. We thus conclude, as did the circuit court and court of appeals, that the arbitration provision is both procedurally and substantively unconscionable. We further conclude that there is a sufficient quantum of both procedural and substantive unconscionability to render the arbitration provision invalid.

---

[62] *Ting*, 319 F.3d at 1151 (holding fee splitting provision of arbitration agreement unconscionable under California law); *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 894 (9th Cir. 2002) (holding that an arbitration fee allocating scheme in an employment contract would, alone, render the arbitration provision unconscionable under California law); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1235 (10th Cir. 1999) (invalidating fee splitting provision that would have required employee to pay $1875 of $6875 fee); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1485 (D.C. Cir. 1997) (upholding fee splitting agreement in employment contract after construing agreement to require employer pay all of arbitrator's fees); *Armendariz,* 6 P.3d at 687 ("[T]he arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.").

*See* cases cited at 1 Farnsworth, *supra* note 19, § 4.28, at 593 n.51.

## IV

¶ 77. Finally, we turn to the question of whether the Federal Arbitration Act[63] preempts state law that prohibits unconscionable arbitration provisions. The Federal Arbitration Act simultaneously protects arbitration provisions in contracts evidencing a transaction involving commerce and the same time protects the historic role of state law in the formation and enforceability of contracts. Thus § 2 of the Act provides that an arbitration provision may be unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." The Act functions to preserve state contract law.

¶ 78. Section 2 of the federal act states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*[64]

■■

¶ 79. Our application of state contract law to invalidate the arbitration provision at issue in the instant case is consistent with § 2 of the Federal Arbitration Act. Indeed, the United States Supreme Court has expressly stated that "[g]enerally applicable con-

---

[63] 9 U.S.C. §§ 1–16 (2005).

[64] 9 U.S.C. § 2 (2005) (emphasis added).

The parties do not dispute that the Federal Arbitration Act applies to the transaction at issue in the instant case.

tract defenses, such as fraud, duress, or *unconsciona-bility,* may be applied to invalidate arbitration agreements without contravening § 2 . . . ."[65] Our contract law on unconscionability does not single out arbitration provisions.[66] We therefore conclude that the Federal Arbitration Act does not preempt our unconscionability analysis.

[65] *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 682 (1996) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 281 (1995)) (emphasis added).

[66] *See, e.g., Doctor's Assocs.,* 517 U.S. at 685–88 ("[C]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. By enacting § 2 [of the FAA], Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' " (emphasis in *Doctor's Assocs.;* internal citations omitted)); *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 281 (1995) (quoting 9 U.S.C. § 2) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' " (emphasis in *Allied-Bruce* opinion)); *Perry v. Thomas,* 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2 [of the FAA]." (emphasis in *Perry*)); *Southland Corp. v. Keating,* 465 U.S. 1, 16 n.11 (1984) (quoting 9 U.S.C. § 2) ("[A] party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists at law or in equity 'for the revocation of *any* contract' but merely a ground that exists for the revocation of arbitration provisions in contracts subject to the California Franchise investment Law." (emphasis in *Southland*)).

557

¶ 80. Although we do not rest our conclusion of unconscionability on the effect of the arbitration provi sion on remedies under the Wisconsin Consumer Act (class actions and injunctive relief), we do comment that the borrower's alleged inability to exercise class action and injunctive rights and remedies under the Consumer Act supports our conclusion of unconscionability.

¶ 81. Although the Wisconsin Consumer Act was not enacted to invalidate arbitration agreements, Wisconsin Auto Title Loans contends that the Federal Arbitration Act preempts an unconscionability analysis based on the provisions of the Wisconsin Consumer Act, because the Consumer Act is not a law of general applicability; the Consumer Act applies only to a subset of contracts.[67] Wisconsin Auto Title Loans also argues that the Consumer Act remedies such as class-wide injunctive relief must be preempted because, to the extent that they require judicial resolution, they are effectively no more than a ground to invalidate an arbitration provision.

¶ 82. Amici curiae University of Wisconsin Law Professors argue, on the contrary, that the Federal Arbitration Act preempts only those laws that target arbitration specifically while preserving through the savings clause state laws affecting contracts. In other words, amici contend that the Federal Arbitration Act savings clause exempts from preemption a state statute governing contracts generally that does not specifically

---

[67] Wisconsin Auto Title Loans directs our attention to *Bradley v. Harris Research, Inc.,* 275 F.3d 884 (9th Cir. 2001), involving a provision in the California Business and Professions Code prohibiting franchise agreements from restricting venue of litigation under such agreements to a forum outside of California.

target arbitration provisions, even those statutes applicable to a subset of contracts. Thus, a state statute that regulates consumer contracts but does not specifically target arbitration provisions would, under their argument, be valid. Citing to the Uniform Commercial Code and statutory regulation of contracts of financial institutions, car dealers, and insurance companies, for example, the Professors argue that most contract law is subject-specific and that Wisconsin Auto Title Loans' distinction between general contract defenses and the Consumer Act is illusory and untenable and has no place in Federal Arbitration Act jurisprudence.

¶ 83. Amici find support for their position in a footnote in the United States Supreme Court opinion in *Perry v. Thomas*, 482 U.S. 483 (1987), in which the Court stated:

> Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2 [of the Federal Arbitration Act].[68]

¶ 84. The quoted language from *Perry* strongly suggests that the Wisconsin Consumer Act would not be preempted were the U.S. Supreme Court to address the issue.

¶ 85. We need not and do not decide this preemption issue in the instant case. As we discuss above, we conclude that the arbitration provision is unconscionable even if it did not foreclose class claims or injunctive relief under the Wisconsin Consumer Act.

---

[68] *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

\* \* \* \*

¶ 86. In sum, we hold that the arbitration provision of the loan agreement between Wisconsin Auto Title Loans and the borrower is unconscionable.

¶ 87. The following factors render the arbitration provision procedurally unconscionable: Wisconsin Auto Title Loans was in the business of providing loans with automobile title as collateral and was experienced in drafting such loan agreements; Wisconsin Auto Title Loans was in a position of substantially greater bargaining power than the borrower; the borrower was indigent and in need of cash; and the loan agreement was an adhesion contract presented to the borrower on a take-it-or-leave-it basis.

¶ 88. The broad, one-sided, unfair "save and except" parenthetical in the arbitration provision allowing Wisconsin Auto Title Loans full access to the courts, free of arbitration, while limiting the borrower to arbitration renders the arbitration provision substantively unconscionable. Other factors support this conclusion of law.

¶ 89. Thus a sufficient quantum of both procedural and substantive unconscionability exists to render the arbitration provision invalid. We therefore remand the matter to the circuit court for further proceedings on Wisconsin Auto Title Loans' replevin action and the borrower's answer and counterclaims.

¶ 90. *By the Court.*—The decision of the court of appeals is affirmed.

¶ 91. LOUIS B. BUTLER, JR., J. (*concurring*). I join the opinion and mandate of the court. I write separately to add that which needs be said: charging 300 percent interest for a short-term loan to those who

can ill-afford it is ridiculous, unreasonable, and unconscionable. Wisconsin citizens deserve better.

¶ 92. Proponents of companies that provide auto title loans insist that the companies are providing a necessary service and taking on a risk that no other lender will take on. They assert that if they did not provide these loans, substantial numbers of people will be unable to obtain a loan. They also assert that the high interest rate is the only way they can afford to take the risk. These lenders claim they are the only option for debt-strapped consumers.

¶ 93. While these lenders may be the only option for debt-strapped consumers, they are not a reasonable option. Auto title loans are so expensive that they drive many people deeper into debt. In addition, auto title loans are secured by the consumer's automobile or truck. Lenders often, as the lender did in this case, actually keep an extra set of keys to the vehicle—and may take possession of a vehicle if a borrower is delinquent in making one payment. If a payment is missed, the lender can start the process of taking the borrower's vehicle, resulting in a loss of transportation to work and to obtain health care.

¶ 94. Predatory lenders exploit borrowers through excessively high interest rates. Consumers who must borrow money this way are usually in desperate debt. These lenders target low-income consumers, individuals with stained credit scores, and those in society who cannot access traditional sources of money and credit. The high rates that predatory lenders charge make it difficult for borrowers to repay the loan, resulting in many consumers being driven onto a perpetual debt treadmill. Essentially, the predatory lender sets the borrower up to fail.

¶ 95. We have held that a sufficient quantum of both procedural and substantive unconscionability exists to render the arbitration proceeding in this case invalid, and remanded the matter to the circuit court for further proceedings on Wisconsin Auto Title Loans' replevin action and the borrower's answer and counterclaims. Nevertheless, the legislature can put an end to this practice in future cases by capping auto title loans at an annual percentage rate it determines to be reasonable. Anything less short-changes the public. I urge the legislature to act now to protect the citizens of this great state.

¶ 96. For the foregoing reasons, I respectfully concur.

¶ 97. I am authorized to state that Justice N. PATRICK CROOKS joins this concurrence.

¶ 98. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). I agree with the majority opinion's statement of the rule of law that is employed when a court determines whether a contract provision is unconscionable. Majority op., ¶¶ 29, 30. I agree that both procedural and substantive unconscionability must be present before a clause will be held to be unenforceable. *Id.*, ¶ 29. I also agree with the majority opinion's conclusion that the arbitration clause in the contract between Wisconsin Auto Title Loans and Kenneth Jones is substantively unconscionable, as a matter of law. *Id.*, ¶ 69. I write separately because I conclude that there are not sufficient facts of record to support the majority opinion's conclusion that the arbitration provision of the contract is procedurally unconscionable. Therefore, I would reverse the court of appeals decision and remand to the circuit court for arbitration of the counterclaims. I also would allow the circuit court to

consider whether to stay the replevin action until the arbitration is complete. Accordingly, I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶ 99. There was no evidentiary hearing before the circuit court and no affidavits were filed by the parties relative to procedural unconscionability. In regard to the potential sources for facts, the record contains a complaint[1] seeking replevin of Jones's automobile based on his alleged default on the loan repayment obligation; an affidavit showing an inability to personally serve Jones; proof of service by publication; an answer that denied default; counterclaims asserting that Wisconsin Auto Title Loans deliberately concealed loan costs, that Jones was unemployed and in need of cash for personal and household needs, that Jones's only income at the time he took out the loan came from unemployment benefits, that the loan form Jones signed was a preprinted, non-negotiable, standardized contract, that Jones did not have "meaningful access to traditional credit resources, or conventional consumer loans"; a notice of motion and motion to compel Jones to arbitrate the issues raised by his counterclaims, while staying the counterclaims but not the replevin action; a petition for waiver of filing and service fees for the counterclaims as well as the jury fees; an order granting the waiver of fees based on Jones's indigence; amended counterclaims with the same factual allegations; an objection to the arbitration clause as being unconscionable; a notice of motion and motion to limit the issues before the circuit court "to the single question of

---

[1] Copies of portions of the loan documents and the notice of default are attached to the complaint.

whether the issues raised in defendant's answer and counterclaims are subject to arbitration rather than judicial process"; the recitation of an agreement between the parties that no reply to the counterclaims would be due until the court decided the pending motions; and the circuit court order concluding that the arbitration provision is unconscionable.

¶ 100. None of the factual allegations in the counterclaims was admitted. However, notwithstanding the lack of such admissions and the failure to hold an evidentiary hearing, the circuit court concluded that the arbitration provision was procedurally unconscionable because:

> The plaintiff is experienced in the business of supplying auto loans, drafting agreements, was in a position of greater bargaining power than the defendant. The agreement was presented to defendant in a take it or leave it manner, and the terms of the arbitration agreement were not explained to the defendant.

The court of appeals affirmed that decision. *Wis. Auto Title Loans, Inc. v. Jones,* 2005 WI App 86, ¶ 1, 280 Wis. 2d 823, 696 N.W.2d 214. The majority opinion affirms the court of appeals. Majority op., ¶ 9.

## II. DISCUSSION

A. Standard of Review

¶ 101. Whether a contract clause is unconscionable is a question of law. *First Fed. Fin. Serv., Inc. v. Derrington's Chevron, Inc.,* 230 Wis. 2d 553, 559, 602 N.W.2d 144 (Ct. App. 1999). "However, because the elements of procedural unconscionability are so intertwined with the factual findings, we give weight to the

[circuit] court's conclusions on that prong." *Id.* We will uphold a circuit court's findings of fact unless they are not supported by the record, in which case those findings are clearly erroneous. *Schreiber v. Physicians Ins. Co. of Wis.,* 223 Wis. 2d 417, 426, 588 N.W.2d 26 (1999).

## B. Procedural Unconscionability

¶ 102. Procedural unconscionability occurs when the contracting parties have not had a true meeting of the minds. *Leasefirst v. Hartford Rexall Drugs, Inc.,* 168 Wis. 2d 83, 89–90, 483 N.W.2d 585 (Ct. App. 1992). Procedural unconscionability has also been described as arising from "the process of the parties' assent to contract." *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 340, 555 N.W.2d 640 (Ct. App. 1996).

¶ 103. Facts that are relevant to the issue of procedural unconscionability are the "age, intelligence, business acumen, business experience and relative bargaining power of the parties." *Id.* (citation omitted). Courts have also considered the print size of the contractual provision under consideration; whether the provision was disclosed and explained; whether all the parties to the contract were disclosed and their relationship to one another explained; and whether both parties had a sufficient opportunity to read the contract. *Leasefirst,* 168 Wis. 2d at 90. Whether alterations in the terms of the contract were possible and whether there was any alternate source for the item for which the contract was made are relevant facts, as well. *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.,* 117 Wis. 2d 587, 602, 345 N.W.2d 417 (1984) (citations omitted).

¶ 104. "[A]n evidentiary hearing is required to enable the court to make the necessary findings of fact to support a conclusion that a [contract] clause is

unconscionable." *Datronic Rental Corp. v. DeSol, Inc.*, 164 Wis. 2d 289, 294, 474 N.W.2d 780 (Ct. App. 1991). This is so because procedural unconscionability is a fact-driven determination that cannot be ascertained solely from the written contract.[2] *Kohler,* 204 Wis. 2d at 340. The burden of proof is on the person claiming that the contract clause is unconscionable to prove facts sufficient to support that contention. *Wassenaar v. Panos,* 111 Wis. 2d 518, 526, 331 N.W.2d 357 (1983).

¶ 105. Jones had the burden of proof to develop facts sufficient to support the legal conclusion that the arbitration clause was unconscionable. *Id.* The court of appeals noted that there was no evidentiary hearing to support the necessary facts, but concluded that the circuit court made factual findings, "apparently based on the record and representations made by the attorneys at oral argument." *Wis. Auto Title Loans,* 280 Wis. 2d 823, ¶ 17. The court of appeals then decided that Wisconsin Auto Title Loans "waived its objections" to the circuit court's having made factual findings in this manner. *Id.* In so doing, the court of appeals shifted the burden of proof from Jones to Wisconsin Auto Title Loans and permitted the circuit court to avoid its obligation as the fact-finder for the issues now before us on review.

¶ 106. The facts upon which the circuit court relied were not uncontested facts. The facts upon which the circuit court relied were not stipulated facts. The facts upon which the circuit court relied were not admitted by the pleadings. The facts upon which the circuit court relied were not developed in an evidentiary

---

[2] Because substantive unconscionability addresses the reasonableness of the contract terms to which the parties agreed, it often can be determined from the face of the contract. *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 340–41, 555 N.W.2d 640 (Ct. App. 1996).

hearing. Nonetheless, the circuit court made findings of fact in regard to procedural unconscionability. Because the facts employed by the circuit court were not uncontested facts, or stipulated facts, or facts admitted by the pleadings, or facts developed through an evidentiary hearing, they are clearly erroneous. *Schreiber,* 223 Wis. 2d at 426.

¶ 107. The majority opinion provides a detailed justification for its reliance on the circuit court's inferences, along with its own inferences from the record, to support its conclusion of procedural unconscionability. Majority op., ¶¶ 41–52. We have previously held that "it is impermissible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities.' " *Merco Distrib. Corp. v. Commercial Police Alarm Co.,* 84 Wis. 2d 455, 461, 267 N.W.2d 652 (1978). We have also held that arguments of counsel are an insufficient foundation for fact finding. *Dane County v. McManus,* 55 Wis. 2d 413, 425–26, 198 N.W.2d 667 (1972). Notwithstanding years of precedent in this regard, that is exactly what the circuit court, the court of appeals and this court have done.

¶ 108. The record does not contain undisputed facts regarding any of the following considerations: real and voluntary meeting of the minds; Jones's age, education or intelligence; whether the terms were explained to him; whether alterations in the printed terms were possible; and whether Jones could have gotten a loan elsewhere. We do not know whether Jones previously had taken loans from Wisconsin Auto Title Loans, or from a similar lender. Therefore, contrary to the majority opinion, we do not know his level of "sophistication"[3] relative to a transaction of this type.

---

[3] *See* majority op., ¶ 49.

¶ 109. The borrower's financial circumstances at the time when the loan was made are relevant to determining procedural unconscionability. *Disc. Fabric,* 117 Wis. 2d at 601. However, we do not know what Jones's financial circumstances were when the loan was made. The majority opinion infers that he was indigent then because he was indigent six months later. Majority op., ¶ 50. While that may be true, it is not the only inference that may be made from the record. The majority opinion also infers that because Jones took this loan after being advised that the interest rate was 300% per year and that if he could borrow at a lower rate he should do so, he had no other alternative but to borrow from Wisconsin Auto Title Loans. *Id.* Again, while this may be true, it may also be true that Jones never looked for another lender. It may also be true that Jones would have been better served if he had taken no loan at all from any lender. And finally, the majority opinion finds that the loan agreement was presented to Jones on a "take-it-or-leave-it" basis. Majority op., ¶ 52. This is not an undisputed fact. There is no testimony about any of the circumstances that surrounded the making of the loan.

¶ 110. The majority opinion does note that the circuit court's finding that the borrower was unemployed and needed funds for household expenses is not supported by evidence in the record and cannot be reasonably inferred. Majority op., ¶ 54. It makes the same conclusion about the circuit court's finding that the terms of the agreement were not explained to Jones. Majority op., ¶ 55. I agree with the majority that the record contains no support for those findings. However, I also point out that a court may make factual inferences only when the basic facts are first found or are undisputed. It is that initial step that is missing here.

¶ 111. We have long-standing rules that guide the circuit court, the court of appeals and our own decisions in regard to which court is to make factual findings and how that is to occur. *Datronic,* 164 Wis. 2d at 294 (concluding that an evidentiary hearing is required before the issue of unconscionability can be decided); *McManus,* 55 Wis. 2d at 425–26 (concluding that oral representations of counsel are not a sufficient basis on which to base facts needed for a circuit court finding or a supreme court's decision); *Wis. State Employees Union v. Henderson,* 106 Wis. 2d 498, 501–02, 317 N.W.2d 170 (Ct. App. 1982) (concluding that the court of appeals is without jurisdiction to make factual findings); *Schreiber,* 223 Wis. 2d at 426 (concluding that facts found without a record to support them are clearly erroneous).

¶ 112. Although it is easy to understand the emotional tug that Jones's claims exert on the courts, employing consistent procedures in each case protects against arbitrary decision making in all cases. Because I conclude that the rules of evidence were not applied in accord with long-standing precedent, I would reverse the decision of the court of appeals.

### III. CONCLUSION

¶ 113. I conclude that there are not sufficient facts of record to support the majority opinion's conclusion that the arbitration provision of the contract is procedurally unconscionable. Therefore, I would reverse the court of appeals decision and remand to the circuit court for arbitration of the counterclaims. I also would allow the circuit court to consider whether to stay the replevin action until the arbitration is complete. Accordingly, I respectfully dissent from the majority opinion.

¶ 114. I am authorized to state that Justice JON P. WILCOX joins this dissent.